**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| LAURA WILCOPOLSKI, individually and on behalf of all others similarly situated, | |
| *Plaintiff*, | Civil Action No. 1:24-cv-03235-LMM |
| v. | |
| FIRST ADVANTAGE FORM I-9 COMPLIANCE, LLC, | |
| *Defendant*. | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND EXPENSES

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .......................................................................... iii

I. INTRODUCTION .................................................................................1

II. FACTUAL BACKGROUND ..................................................................2

   A. Procedural Overview of the Litigation and Summary of Negotiations.................2

   B. Summary of Settlement Terms..............................................................4

III. LEGAL STANDARD .........................................................................7

IV. ARGUMENT .....................................................................................8

   A. The Requested Fee Should be Approved Because it is Reasonable and Supported by the Relevant Factors.................................................................9

   B. The Requested Attorneys' Fees and Expenses Award is Reasonable Under the *Johnson* Factors. ...................................................................12

     1. The Results Obtained and Fess in Similar Cases ...............................13

     2. The Novelty and Difficulty of the Legal and Factual Issues Support the Requested Fee.......................................................................15

     3. Plaintiff's Attorneys Were Precluded From Other Employment by the Acceptance of this case...........................................................16

     4. Whether the Fee is Fixed or Contingent........................................17

     5. The Experience, Reputation, and Ability of the Attorneys.................18

     6. The Time and Labor Required.....................................................20

   C. The Expenses Submitted as Part of the Attorneys' Fees and Expenses Request is Reasonable ......................................................................21

V. CONCLUSION ............................................................................................22

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                               **Page(s)**

*Alghadeer Bakery & Marker, Inc. v. Worldpay US, Inc.*,
  NO. 1:18-cv-02688-MLB, 2020 WL 10935986 (N.D. Ga. Une 3, 2020)............11

*Behrens v. Wometco Enters., Inc.*,
  118 F.R.D. 534 (S.D. Fla. 1988) .........................................................................17

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980).......................................................................................7, 8

*Cabot E. Broward 2 LLC v. Cabot*, No.,
  16-61217-CIV, 2018 WL 5905415 (S.D. Fla. Nov. 9, 2018)...............................11

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
  946 F.2d 768 (11th Cir. 1991) ...........................................................8, 10, 11, 14

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
  2012 WL 12540344 (N.D. Ga. Oct. 26, 2012) .....................................................17

*Cotter v. Checkers Drive-In Rests., Inc.*,
  No. 8:19-cv-1386, 2021 WL 3773414 (M.D. Fla. Aug. 25, 2021)......................15

*Dikeman v. Progressive Exp. Ins. Co.*,
  312 F. App'x 168 (11th Cir. 2008).......................................................................12

*Dowdell v. Apopka*,
  698 F.2d 1181 (11th Cir. 1983) ............................................................................21

*Hart v. Movement Mortg. LLC*,
  No. 814CV1168JLSPLAX, 2016 WL 11756826 (C.D. Cal. Nov. 30, 2016).......10

*In re Anthem, Inc. Data Breach Litig.*,
  No. 15-MD-02617-LHK, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018)............14

*In re Arby's Rest. Grp., Inc. Data Sec. Litig.*,
  2019 WL 2720818 (N.D. Ga. June 6, 2019)..................................... 10, 15, 16, 18

*In re Blue Cross Blue Shield Antitrust Litig.*,
  85 F.4th 1070 (11th Cir. 2023) ...............................................................................8

*In re Checking Account Overdraft Litig.*,
    2013 WL 11319244 (S.D. Fla. Aug. 2, 2013) ......................................................14

*In re Citrix Data Breach Litig.*,
    No. 19-61350-CIV, 2021 WL 2410651 (S.D. Fla. Jun 11, 2021) ........................15

*In re Equifax Inc. Cust. Data Sec. Breach Litig.*,
    999 F.3d 1247 (11th Cir. 2021) ..................................................................8, 11

*In re Ethicon Physiomesh Flexible Composite Hernia Mesh Prods. Liab. Litig.*,
    No. 1:17-md-02782, 2022 WL 17687425 (N.D. Ga. Nov. 22, 2022)...................12

*In re Friedman's, Inc. Sec. Litig.*,
    2009 WL 1456698 (N.D. Ga. May 22, 2009) ......................................................17

*In re Heartland Payment Sys., Inc., Customer Data Sec. Breach Litig.*,
    MDL No. 09-2046, 2012 WL 896256 (S.D. Tex. Mar. 14, 2012) ........................19

*In re Home Depot Inc. Customer Data Sec. Breach Litig.*,
    931 F.3d 1065 (11th Cir. 2019) ..........................................................................7, 8

*In re The Home Depot, Inc., Cust. Data Sec. Breach Litig.*,
    2016 WL 6902351 ..............................................................................................14

*In re S. Co. S'holder Derivative Litig.*,
    No. 1:15-CV-725-MHC, 2022 WL 4545614 (N.D. Ga. June 9, 2022) ......... 13, 16

*Ingram v. The Coca-Cola Co.*,
    200 F.R.D. 685 (N.D. Ga. 2001).........................................................................10

*Johnson v. Ga. Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974)............................................................ 8, 12, 13, 15

*Lone Star Nat'l Bank N.A. v. Heartland Payment Sys., Inc.*,
    729 F.3d 421 (5th Cir. 2013) ..............................................................................19

*Lunsford v. Woodforest Nat'l Bank*,
    No. 1:12-cv-103, 2014 WL 12740375 (N.D. Ga. May 19, 2014) .................11, 17

*Morgan v. Pub. Storage*,
    301 F. Supp. 3d 1237 (S.D. Gal. 2016)...............................................................12

*Norman v. Housing Auth. Of Montgomery*,
  836 F.2d 1292 (11th Cir. 1988) ...................................................................9

*Ressler v. Jacobson*,
  149 F.R.D. 651 (M.D. Fla. 1992) ...............................................................20

*SELCO Cmty. Credit Union v. Noodles & Co.*,
  267 F. Supp. 3d 1288 (D. Colo. 2017) .......................................................19

*Waters v. Int'l Precious Metals Corp.*,
  190 F.3d 1291 (11th Cir. 1999) .................................................................11

*Wilson v. J.B. Hunt Trans. Inc.*,
  No. 5:21-cv-5194, 2022 WL 20273042 (W.D. Ar. Oct. 6, 2022) .............19

*Wolff v. Cash 4 Titles*, No.,
  03-22778-CIV, 2012 WL 5290155 (S.D. Fla. Sept. 26, 2012) ..........11, 14

*Yarrington v. Solvay Pharm., Inc.*,
  697 F. Supp. 2d 1057 (D. Minn. 2010) ......................................................20

*Yule v. Jones*,
  766 F. Supp. 2d 1333 (N.D. Ga. 2010) ......................................................22

**Statutes**

Ga. Code Ann. § 13-6-11 ...............................................................................2

**Rules**

Fed. R. Civ. P. 23(h) ...................................................................................1, 7

Fed. R. Civ. P. 54(d)(2) ..................................................................................1

**Other Authorities**

*Attorneys' Fees in Class Actions: 2009-2013*,
  92 N.Y.U. Law Rev. 937 (2017) ...............................................................14

Under Fed. R. Civ. P. 23(h) and Fed. R. Civ. P. 54(d)(2), as well as this Court's Preliminary Approval Order (Doc. 26), Settlement Class Counsel respectfully submits this Memorandum of Law in Support of Plaintiff's Motion for Attorneys' Fees and Expenses.

Unless otherwise stated, all definitions herein are the same as in the Settlement Agreement and Release ("S.A."). Doc. 25-2.

## I.    INTRODUCTION

This litigation arises from a Cybersecurity Incident at Defendant First Advantage Form I9 Compliance, LLC ("Form I-9") that compromised the security of the Private Information of Plaintiff Laura Wilcopolski ("Plaintiff") and approximately one hundred and ninety-three thousand and four hundred and three (193,403) Settlement Class Members nationwide. The Parties negotiated a Settlement providing significant relief for Plaintiff and the Settlement Class Members whom Plaintiff seeks to represent. As part of the Settlement, Settlement Class Counsel now seek Attorneys' Fees and Expenses in the amount of $216,666.66 which represents one-third of the non-reversionary Common Settlement Fund. S.A. ¶¶ 57, 95.  As described below, the Attorneys' Fees and Expenses are well within the range awarded in similar class action cases in this District and the Eleventh Circuit.

## II.    FACTUAL BACKGROUND

### A.    Procedural Overview of the Litigation and Summary of Negotiations

On May 31, 2024, Form I-9 sent data breach notices to Plaintiff and other individuals whose information was compromised in the Cybersecurity Incident.  The Cybersecurity Incident impacted approximately one hundred and ninety-three thousand and four hundred and three (193,403) current or former employees of Form I-9's clients in the United States. Thereafter, Plaintiff filed a class action lawsuit on July 22, 2024 alleging that Form I-9 failed to implement and maintain reasonable data security measures. Doc 1. Plaintiff asserted claims for negligence, breach of third-party beneficiary contract, unjust enrichment, and sought declaratory and injunctive relief, as well as statutory relief under Ga. Code Ann. § 13-6-11. *Id.*

In response to Plaintiffs' Complaint, Defendant filed a Motion to Dismiss and Memorandum of Law in Support. Doc. 8, 8.1. While the Parties were conferring regarding the Joint Preliminary Report and Scheduling Order, the Parties began discussing the allegations in the Complaint and claims for relief and the possibility of early resolution that would provide much-needed relief to Plaintiff and the Settlement Class. On September 9, 2024, the Parties jointly moved to stay the proceedings to allow the Parties to focus their efforts on resolution. Doc. 16. On September 10, 2024, the Court granted a forty-five day stay of the case up through October 24, 2024. Doc. 17.

The Parties continued their settlement negotiations throughout September and early October 2024. *See* Joint Declaration of Plaintiff's Counsel Supporting Their Unopposed Motion for Preliminary Approval of Class Action Settlement ("Joint Decl.") Doc. 25-3 ¶¶ 5-9; Exhibit 1, Declaration of Settlement Class Counsel in Support of Plaintiffs' Motion for Attorneys' Fees and Expenses ("Counsel Decl.") ¶¶ 3, 6. The Parties engaged in an informal exchange of information and documents pursuant to Rule 408 in order to determine the details and scope of the Cybersecurity Incident. Joint Decl. ¶ 7; Counsel Decl. ¶ 3. The Parties exchanged non-public documents and information regarding the Cybersecurity Incident, remedial measures taken by Form I-9, the size of the class, harm, misuse and other data breach settlement, and information supporting Plaintiff's damages allegations, allowing both Settlement Class Counsel and Form I-9's counsel the ability to evaluate damages on a class-wide basis. *Id.* After the exchange of information that informed the Parties, they engaged in several back-and-forth negotiations over the course of several weeks. Counsel Decl. ¶ 5. After multiple settlement discussions and exchanging a series of offers and demands and information about the Cybersecurity Incident and class size, the Parties agreed to a settlement in principle. Joint Decl. ¶¶ 8-9. On October 18, 2024, the Parties informed the Court that they had reached a settlement in principle. Doc. 18. On October 23, 2024, the Parties sought an extension of the stay entered by the Court to enable the Parties time to present a

comprehensive and well-prepared settlement submission to the Court. Doc. 19. The detailed settlement negotiations strongly indicate that Settlement was reached without collusion. Counsel Decl. ¶ 6.

The Parties formally executed the initial Settlement Agreement on November 14, 2024 Doc. 23-2. Plaintiff submitted her original Unopposed Motion for Preliminary Approval of Class Action Settlement and Preliminary Certification of Settlement Class on November 22, 2024. Doc. 23.  In response to guidance from the Court in an Order dated December 2, 2024, (Doc. 24), and after meeting and conferring with Counsel for Form I-9, Plaintiff submitted her Amended Unopposed Motion for Settlement of Class Action for the Court's consideration on December 19, 2024 (Doc. 25) and Settlement Agreement (Doc. 25-2).  On January 13, 2025, the Court issued an Order and granted Preliminary Approval on January 13, 2025. Doc 26.

### B.     Summary of Settlement Terms

The Settlement provides significant benefits to the Settlement Class, which is comprised of one hundred and ninety-three  thousand and four hundred and three (193,403) nationwide. The Settlement creates numerous benefits for the Settlement Class, which benefits are designed to address the repercussions to consumers following a Cybersecurity Incident of the type that occurred here. Through the Settlement Agreement, Form I-9 will provide benefits to the Settlement Class

Members by funding a Non-Reversionary Cash Settlement Fund to be administered by the Settlement Administrator in the amount of $650,000.00. S.A. ¶¶ 57, 60, 95; Joint Decl. ¶ 17.

Each Settlement Class Member will be able to select multiple benefits, including: a) Cash Payment A which is reimbursement for ordinary losses fairly traceable to the Cybersecurity Incident up to a total of $1,500.00 per person in the form of a Documented Loss Payment or alternatively reimbursement for extraordinary losses fairly traceable to the Cybersecurity Incident up to a total of $5,000.00 per Settlement Class Member also in the form of a Documented Loss Payment; or b) Cash Payment B which is a flat payment in the amount of $50.00 which will be funded and increased *pro rata* or decreased *pro rata* based on the number of Valid Claims and the amount in the Settlement Fund after the payment of Documented Losses, Identity Monitoring, the costs and expenses of Settlement Administration, and the Attorneys' Fee and Expenses Award, if approved by the Court. S.A. ¶¶ 64, 65; Joint Decl. ¶¶ 13-16.

In addition to either Cash Payment A or Cash Payment B, Settlement Class Members may also make a Claim for Identity Monitoring. S.A. ¶ 66; Joint Decl. ¶ 15. Settlement Class Members who did not elect to receive the Experian identity monitoring services previously offered by the Defendant in connection with the Settlement Class Member's Cybersecurity Incident notification letter may elect to

receive up to three years of Identity Monitoring. *Id.* Settlement Class Members who elected to receive 24 months of identity monitoring services previously offered by Form I-9 in connection with its initial Cybersecurity Incident notification letter may elect to receive an additional one year of Identity Monitoring. *Id.* The Identity Monitoring will include (i) real time monitoring of the credit file at a single bureau; (ii) dark web scanning with notification if evidence of the individual's Personal Information is found; (iii) identity fraud loss insurance (no deductible) up to $1 million; (iv) access to fraud specialists to help investigate instances of identity theft; and (v) identity theft restoration services. *Id.*

In addition, Form I-9 confirmed for Plaintiff and Settlement Class Counsel its enhanced data security procedures put in place subsequent to the Cybersecurity Incident. Plaintiff verified the information contained therein. Joint Decl. ¶ 16. The Settlement Administrator will file any necessary tax returns and pay all taxes required on behalf of the Settlement Fund and any such Taxes and Tax-Related Expenses will be included in the Administration and Notice Costs. S.A. ¶ 61, 71(o).

Settlement Class Counsel achieved this settlement as the result of extensive and often intense arm's length negotiations. Counsel Decl. ¶ 6. In both negotiating and finalizing the Settlement, Settlement Class Counsel worked diligently to achieve beneficial terms for the Settlement Class. Settlement Class Counsel secured both a cash recovery and additional relief for the Settlement Class, in addition to ensuring

Form I-9 had implemented security measures to prevent a similar data breach from occurring again. Joint Decl. ¶¶ 13-16.  Settlement Class Counsel believe, based on their considerable expertise, that the Settlement is in the best interest of the Settlement Class. Counsel Decl. ¶ 18.  Because the litigation and negotiations were hard fought and these results are substantial, Settlement Class Counsel now seeks Attorney's Fees and Expenses that are reasonable in light of the time, risks, and expenses taken on litigating this case on the Settlement Class Members' behalf. *See generally* Counsel Decl.

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 23(h) allows a district court supervising a class action to "award reasonable attorney's fees and nontaxable costs that are authorized by law." Fed. R. Civ. P. 23(h).  The United States Supreme Court noted that attorneys who represent a class and whose efforts achieve a benefit for the class are "entitled to a reasonable attorney's fee from the fund as a whole," as appropriate compensation for their services to the class. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  "[D]istrict courts have great latitude in setting fee awards in class action cases." *In re Home Depot Inc. Customer Data Sec. Breach Litig.*, 931 F.3d 1065, 1078 (11th Cir. 2019) (internal quotation and citation omitted).

In common fund cases, such as this case, the Eleventh Circuit has held that the "percentage of the fund approach" should be used to determine a reasonable fee

award when the settlement established a common fund. *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991). In common fund cases, such as this case, "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole." *Home Depot*, 931 F.3d at 1079 (citing *Boeing*, 444 U.S. at 478). "The percentage method . . . remains the proper method to apply when awarding attorney's fees in common fund settlement cases." *In re Equifax Inc. Cust. Data Sec. Breach Litig.*, 999 F.3d 1247, 1279 (11th Cir. 2021). Courts typically award at least between 20 and 35 percent of the fund in complex cases. *In re Blue Cross Blue Shield Antitrust Litig.*, 85 F.4th 1070, 1100 (11th Cir. 2023). If the requested percentage is higher than twenty-five percent, then the district court applies the twelve factors detailed in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). *Id*. Though the district court must articulate its basis for the award of fees and expenses, the court has "ample discretion" in awarding such fees and expenses. *In re Home Depot*, 931 F.3d at 1088–89.

## IV.    ARGUMENT

Class Counsel's efforts created a $650,000.00 non-reversionary Settlement Fund where Settlement Class Members can easily submit a claim for significant cash benefits.  This Settlement represents an excellent result for the Settlement Class in this litigation.  Although Plaintiff believes in the merits of her claims, this litigation

was inherently risky and complex. The claims involve a challenging fact pattern for a data breach case and also the intricacies of data breach litigation, a fast-developing area in the law. Plaintiff would face risks at each stage of litigation. Against these risks, it was through the hard-fought negotiations and the skill and hard work of Class Counsel and the Class Plaintiff that the Settlement was achieved for the benefit of the Settlement Class. Class Counsel zealously prosecuted Plaintiff's claims, achieving the Settlement Agreement only after hard-fought litigation and prolonged arm's length negotiations.

### A. The Requested Fee Should be Approved Because it is Reasonable and Supported by the Relevant Factors.

Settlement Class Counsel seeks an award of $216,666.66 in attorneys' fees, which is one-third of the non-reversionary $650,000.00 Settlement Fund, and $1,432.85 in expenses. Counsel Decl. ¶¶ 10-11. The Parties did not discuss payment of attorneys' fees, costs and expenses or service award, as may be ordered by the Court, until after the substantive terms of the Settlement had been agreed upon. Joint Decl. ¶ 22.

District courts have "wide discretion" in exercising judgment on appropriate fee amounts, though courts must articulate the decision made, give principled reasons in support, and show the specific fee calculations. *Norman v. Housing Auth. Of Montgomery*, 836 F.2d 1292, 1304 (11th Cir. 1988). "Courts generally analyze the reasonableness of attorneys' fees using one of two approaches. Where class

action settlements involve a common fund, courts typically base an award of attorneys' fees on the percentage of the common benefit recovered." *See In re Arby's Rest. Grp., Inc. Data Sec. Litig.*, 2019 WL 2720818, at *2 (N.D. Ga. June 6, 2019) ("*Arby's Consumer Litig.*") (citing *Camden I*, 946 F. 2d at 774); *see also Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 696 (N.D. Ga. 2001) (fee supported by percentage of common fund approach also fair and reasonable under lodestar approach).

Here, the Settlement includes a non-reversionary Settlement Fund whereby Class Members are eligible to elect up to $1,500.00 in ordinary documented loss payments or up to $5,000.00 in extraordinary documented loss payments or a flat payment in the amount of $50.00. S.A. ¶¶ 64-65. In addition, Settlement Class Members may make a Claim for Identity Monitoring. S.A. ¶ 66. Courts prefer this structure over claims made settlements. *See, e.g., Hart v. Movement Mortg. LLC*, No. 814CV1168JLSPLAX, 2016 WL 11756826, at *7 (C.D. Cal. Nov. 30, 2016) ("The non-reversionary nature of these amounts counsels in favor of final approval.").

The Eleventh Circuit's controlling authority is *Camden I*, which holds attorneys' fees in common fund cases must be calculated using the percentage-of-

the-fund rather than the lodestar approach.[1] *Camden I*, 946 F.2d at 774-75. In *Camden I*, although the court noted that awards typically range from 20% to 30%, it stated: "There is no hard and fast rule . . . because the amount of any fee must be determined upon the facts of each case." *Id.* at 774; *see also, e.g.*, *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294 (11th Cir. 1999). Following *Camden I*, percentage-based fee awards in the Eleventh Circuit have averaged around thirty-three percent (33%) of the settlement value provided to the class. *See, e.g., Wolff v. Cash 4 Titles*, No. 03-22778-CIV, 2012 WL 5290155, at 5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide-roughly one-third"); *Tracy v. Eletka Inc.*, No. 1:21-cv-02851-SDG (N.D. Ga. Jan. 7, 2025) (same); *Sherwood v. Horizon Actuarial Services, LLC*, No. 1:22-cv-1495 (N.D. Ga. Apr. 4, 2024) (ECF No. 94) (same); *Abrams v. Savannah College of Art & Design, Inc.*, No. 1:22-cv-4297-LMM (N.D. Ga. Sept. 22, 2023) (ECF No. 29) (same); *Alghadeer Bakery & Marker, Inc. v. Worldpay US, Inc.*, No. 1:18-cv-02688-MLB, 2020 WL 10935986, at *4 (N.D. Ga. June 3, 2020) (same); *Waters v. Int'l Precious Metals, Corp.*, 190 F.3d 1291, 1292-98 (11th Cir. 1999) (same); *Lunsford v. Woodforest Nat'l Bank*, No. 1:12-cv-103, 2014 WL 12740375, at *15 (N.D. Ga. May 19, 2014) (same); *Cabot E. Broward 2 LLC v. Cabot*, No. 16-

---

[1] A lodestar cross-check is not required in this Circuit. *In re Equifax Customer Data Sec. Breach Litig.,* 999 F.3d 1247, 1280 (11th Cir. 2021).

61217-CIV, 2018 WL 5905415, at *7-8 (S.D. Fla. Nov. 9, 2018) (same); *Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1257 (S.D. Ga. 2016) (noting that "a fee award of 33% … is consistent with attorneys' fees in federal class actions in this Circuit."). Here, Settlement Class Counsel similarly seek one-third of the Settlement Fund, which is in line with requested awards typically approved by courts within the Eleventh Circuit.

### B.   The Requested Attorneys' Fees and Expenses Award is Reasonable Under the *Johnson* Factors.

When evaluating a request for attorneys' fees, district courts in the Eleventh Circuit often analyze the twelve factors announced in *Johnson*, 488 F.2d at 717-19, to determine the appropriateness of the requested fee amount. *Dikeman v. Progressive Exp. Ins. Co.*, 312 F. App'x 168, 172 (11th Cir. 2008) ("Whether the district court uses the lodestar or the common-fund method, the district court should apply the twelve factors listed in Johnson[.]"); *see also In re Ethicon Physiomesh Flexible Composite Hernia Mesh Prods. Liab. Litig.*, No. 1:17-md-02782, 2022 WL 17687425, at *6 (N.D. Ga. Nov. 22, 2022). Courts within this District have noted that not all twelve Johnson factors need to be reviewed and have determined the reasonableness of a fee request based on the following six Johnson factors: (1) the results obtained and fees in similar cases; (2) the novelty and difficulty of the questions involved; (3) the preclusion of other employment by the attorneys due to the acceptance of this case; (4) whether the fee is fixed or contingent; (5) the

12

experience, reputation, and ability of the attorneys; and (6) the time and labor required. *In re S. Co. S'holder Derivative Litig.*, No. 1:15-CV-725-MHC, 2022 WL 4545614, at *10 (N.D. Ga. June 9, 2022); *see also Johnson*, 488 F.2d 714 (listing all 12 Johnson factors).

### 1.    The Results Obtained and Fess in Similar Cases

The Settlement obtained is a strong one. As noted above, the Settlement provides approximately 193,403 individuals nationwide significant relief through multiple benefit options in the Settlement Agreement. First, the Class is entitled to a portion of a non-reversionary Settlement Fund in the amount of $650,000.00. S.A. ¶¶ 57.   Each Settlement Class Member will be able to elect to take compensation for up to $1,500.00 in ordinary documented loss payments or up to $5,000.00 in extraordinary documented loss payments or a flat payment in the amount of $50.00. S.A. ¶¶ 64-65.   In addition, Settlement Class Members may make a Claim for Identity Monitoring. S.A. ¶ 66.   Settlement Class Members also benefit from business remedial measures implemented by Form I-9. Joint Decl. ¶ 16.

In negotiating the Settlement, Settlement Class Counsel relied on published reports documenting the Cybersecurity Incident, informal Rule 408 discovery, their own experience in data breach litigation, and reported settlements in other data breach class actions. *See* Counsel Decl. ¶ 3.   The Settlement Agreement provides every Settlement Class Member who submits a Valid Claim with a monetary award

that is fair and reasonable, especially considering the risks at class certification and trial. *See* Joint Decl. ¶ 56. The requested fee is also consistent with awards in similar cases. Indeed, percentage-based fee awards in the Eleventh Circuit have averaged around 33% of the class benefit. *See, e.g.*, *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) (noting that fees in this Circuit are "roughly one-third"); T. Eisenberg, et al., *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. Law Rev. 937, 951 (2017) (median fee from 2009-2013 was 33%); *see also* Counsel Decl. ¶¶ 16-17.

Moreover, other cases establish that under the percentage approach, "courts compensate class counsel for their work in extracting non-cash relief from the defendant." *In re Checking Account Overdraft Litig.*, 2013 WL 11319244, at *12 (S.D. Fla. Aug. 2, 2013). If the non-cash relief is hard to value, as here, where one can value the amount spent by Form I-9, but potentially even higher value it has for the Settlement Class, it justifies a higher percentage than would otherwise be appropriate. *See, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *28 (N.D. Cal. Aug. 17, 2018) (mandatory minimum expenditure for cybersecurity was "properly considered in determining an appropriate attorneys' fees award"); *Camden I*, 946 F.2d at 774; *see generally In re The Home Depot, Inc., Cust. Data Sec. Breach Litig.*, 2016 WL 6902351, at *4 (two years of enhanced cybersecurity measures was a valuable class benefit). These cases

14

support a similar percentage fee in this case, thus making Settlement Class Counsel's request for one-third of the Settlement Fund eminently reasonable.

### 2. The Novelty and Difficulty of the Legal and Factual Issues Support the Requested Fee.

The second *Johnson* factor the Court must consider in evaluating a fee award is the novelty and difficulty of the claims raised in the case. *See Johnson*, 488 F.2d at 718. This factor supports the requested award of attorneys' fees. *See Cotter v. Checkers Drive-In Rests., Inc.*, No. 8:19-cv-1386, 2021 WL 3773414, at *12 (M.D. Fla. Aug. 25, 2021) (noting data breach class actions present "serious risks" due, in part, to "the ever-developing law surrounding data breach cases"); *In re Citrix Data Breach Litig.*, No. 19-61350-CIV, 2021 WL 2410651, at *3 (S.D. Fla. Jun 11, 2021) ("Data breach cases in particular present unique challenges with respect to issues like causation, certification, and damages."). Data breach litigation is a relatively new subject matter in class action litigation and the law involves many conflicts among different circuit courts and there are many issues still to be decided in the first instance. *See In re Arby's Consumer Litig.*, 2019 WL 2720818, at *3 ("Consumer class action litigation is complex and difficult to prosecute . . . [and] data breach litigation involves the application of unsettled law with disparate outcomes across states and circuits.").

Here, Settlement Class Counsel faced complex legal questions, including Article III standing; whether Form I-9 had a common law duty to safeguard personal

information; whether Form I-9's failure to implement adequate security measures constituted a negligent act; whether Section 5 of the FTC Act could sustain a claim for negligence *per se* claim; whether Form I-9's inadequate data security measures resulted in the Cybersecurity Incident; and whether the litigation was appropriate for class certification and trial. Settlement Class Counsel also confronted difficult factual questions, such as determining what and whether personal information, including sensitive information like Social Security numbers, were exfiltrated and available for sale. The complexity of the factual and legal issues presented by this litigation supports Settlement Class Counsel's request for attorneys' fees. *See In re Arby's Rest. Grp., Inc. Data Sec. Litig.*, No. 1:17-cv-1035-WMR, 2019 WL 272818, at *3 (N.D. Ga. June 3, 2019) ("Further, data breach litigation involves the application of unsettled law with disparate outcomes across states and circuits. Georgia law, in particular, presents challenges.").

### 3.    Plaintiff's Attorneys Were Precluded From Other Employment by the Acceptance of this case

Settlement Class Counsel's pursuit of this case precluded them from working on other matters. Counsel Decl. ¶ 15. Courts within this District have weighed this factor in favor of Settlement Class Counsel's requested fee when the work on the case precluded Settlement Class Counsel's ability to pursue other matters. *See In re S. Co. S'holder Derivative Litig.*, 2022 WL 4545614, at *12 (noting that class counsel's pursuit of the class action case "necessarily precluded them from devoting

resources to other litigation and the prosecution of additional cases."). Accordingly, this factor supports Settlement Class Counsel's fee request.

### 4.    Whether the Fee is Fixed or Contingent

This litigation, like most class action lawsuits, was prosecuted on a contingent basis because virtually no individual plaintiff possesses a sufficiently large stake in the litigation to justify paying attorneys on an hourly basis. *See Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 2012 WL 12540344, at *4-5 (N.D. Ga. Oct. 26, 2012). Determining a fair fee must include consideration of the contingent nature of the fee and the significant risks of non-recovery. "A contingency fee arrangement often justifies an increase in the award of attorney's fees." *Lunsford v. Woodforest Nat'l Bank*, 2014 WL 12740375, at *15 (N.D. Ga. May 19, 2014) (quoting *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988)). This is because:

> from a pure dollars-and-cents economic view, this higher fee is the appropriate measure of a reasonable fee that is required in the marketplace of services: (1) to induce an attorney to agree to assume the risk that no compensation will be received unless she or he successfully achieves a benefit for the client; and (2) if ultimately successful, to compensate for the costs suffered and investment income forgone by delay in payment.

H. Newberg and A. Conte, 1 *Attorney Fee Awards* § 1.8 (3d. ed.); *see, e.g.*, *In re Friedman's, Inc. Sec. Litig.*, 2009 WL 1456698, at *3 (N.D. Ga. May 22, 2009). Settlement Class Counsel pursued this matter on a wholly contingent basis without any guarantee of recovery while advancing litigation expenses on behalf of Plaintiffs

and the Settlement Class. Counsel Decl. ¶ 15. To the extent there was no recovery for the Settlement Class by way of the non-reversionary Settlement Fund, Settlement Class Counsel would not have been compensated at all for their work in this litigation and would have lost all litigation expenses incurred in pursuing it. *See In re Arby's*, 2019 WL 2720818, at \*4 ("The risk of non-payment based on the contingent nature of recovery in this case supports the requested award of attorneys' fees."). Accordingly, this factor also weighs in favor of granting Settlement Class Counsel's Motion for Attorneys' Fees and Expenses.

### 5. The Experience, Reputation, and Ability of the Attorneys

The experience, reputation, and ability of Settlement Class Counsel is another factor courts evaluate in determining an appropriate attorneys' fee award. As detailed in the Joint Declaration and in the firm biographies submitted as part of Settlement Class Counsel's Amended Motion for Preliminary Approval (Doc. 25-3), Settlement Class Counsel MaryBeth V. Gibson of the Gibson Consumer Law Group, LLC and Mariya Weekes of Milberg Coleman Bryson Phillips Grossman PLLS, relied on their vast experience handling data privacy class actions across the country to negotiate a non-reversionary common fund settlement and additional class member relief, with experienced data breach defense counsel. Counsel Decl. ¶¶ 1-2. Settlement Class Counsel used their experience to resolve this litigation and to reach a uniform, class-wide settlement even considering the risks of class certification or potentially losing

at summary judgment or trial. *See* Counsel Decl. ¶¶ 4-5. Settlement Class Counsel's experience in handling many other data privacy class action cases permitted Settlement Class Counsel to avoid the pitfalls such complex and difficult cases present, and, instead, to recover a settlement worth $650,000.00 to the Settlement Class. *Id.* Settlement Class Counsel's experience in prosecuting data breach cases has proven to be critical to the efficient prosecution and ultimate resolution of this litigation.

The result achieved here is particularly noteworthy considering that the nature of every data breach is different, and some cases have failed at the dismissal or class certification stages. *See, e.g., SELCO Cmty. Credit Union v. Noodles & Co.*, 267 F. Supp. 3d 1288, 1291 (D. Colo. 2017) (dismissing a data breach class action with a nationwide class); *Wilson v. J.B. Hunt Trans. Inc.*, No. 5:21-cv-5194, 2022 WL 20273042 (W.D. Ar. Oct. 6, 2022); *In re Heartland Payment Sys., Inc., Customer Data Sec. Breach Litig.*, MDL No. 09-2046, 2012 WL 896256 (S.D. Tex. Mar. 14, 2012) (after three rounds of dismissal motions, dismissing among other claims, negligence), *rev'd sub nom.*, *Lone Star Nat'l Bank N.A. v. Heartland Payment Sys.*, Inc., 729 F.3d 421, 424 (5th Cir. 2013) (concluding that New Jersey's economic loss doctrine could not be applied at dismissal stage).

This factor further supports Settlement Class Counsel's request for attorneys' fees.

### 6.    The Time and Labor Required

Class Counsel should be rewarded for moving the litigation along with diligence and extraordinary efficiency. This case was resolved after a remarkably short five-month period of active litigation, providing a significant Settlement roughly nine months after the Cybersecurity Incident. In awarding attorneys' fees, courts have consistently recognized and rewarded class counsel for moving the litigation to conclusion with diligence and efficiency. *Ressler v. Jacobson*, 149 F.R.D. 651 (M.D. Fla. 1992) (noting class counsel's efficiency in resolving the case as a factor supporting the requested fee award); *see also Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1063 (D. Minn. 2010) (noting that "Plaintiffs' counsel moved the case along expeditiously, and made every effort to limit duplicative efforts and to minimize the use of judicial resources in the management of the case" and "[c]ounsel exhibited diligence and efficiency throughout the litigation, resulting in a favorable result for the Class."). This factor, like others, weighs in favor of approving Settlement Class Counsel's fee request. Thus, all relevant *Johnson* factors support this Motion for an award of 33.3% of the total value of the relief sought for attorneys' fees.

As set forth in Settlement Class Counsel's Joint Declaration at Doc 25-3, Settlement Class Counsel investigated and negotiated this case extensively. As of the filing of this Motion, Settlement Class Counsel have expended approximately 107.4

hours pursuing this litigation on behalf of the Settlement Class. Counsel Decl. ¶ 11. Settlement Class Counsel will certainly expend additional time and effort pursuing this litigation through the Final Approval Hearing and in overseeing the administration of settlement benefits to Settlement Class Members thereafter. Counsel Decl. ¶14. The amount of time invested by Settlement Class Counsel demonstrates both extremely vigorous advocacy and the efficient use of time by a highly experienced and effective group of advocates.

### C.    The Expenses Submitted as Part of the Attorneys' Fees and Expenses Request is Reasonable

The expenses Settlement Class Counsel incurred through the duration of this case to date is $1,432.85.  Counsel Decl. ¶ 11.  Settlement Class Counsel provide this Section to demonstrate that the expenses were reasonably expended and should be approved as a reasonable subset of the requested fee and expense award. Counsel Decl. ¶¶ 11-13; S.A. ¶ 6, 95.

Settlement Class Counsel have been prudent in monitoring their litigation expenses in this litigation to date. Counsel Decl. ¶ 13. As of March 2025, Settlement Class Counsel have incurred $1,432.85 in expenses consisting of filing fees, service fee, and legal research fees. Counsel Decl. ¶ 11. Settlement Class Counsel will incur additional costs for attending the upcoming Final Approval Hearing. Counsel Decl. ¶ 14. Expenses incurred in furtherance of the claims of a class are properly recovered by counsel. *See, e.g.*, *Dowdell v. Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983) ("all

reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement" may be recovered); *Yule v. Jones*, 766 F. Supp. 2d 1333, 1344 (N.D. Ga. 2010) (same). These expenses were and shall be incurred for the benefit of the Settlement Class.

## V.    CONCLUSION

The Settlement of this litigation resulted from the extensive work and litigation by Settlement Class Counsel and Class Representative. Settlement Class Counsel respectfully requests that the Court approve this application in full and grant Fees in the amount of $216,666.66 and litigation expenses in the amount of $1,432.85 (subject to being updated before the Final Approval hearing).

Respectfully Submitted,

**DATED**: March 31, 2025

/s/ *MaryBeth V. Gibson*
MaryBeth V. Gibson
Georgia Bar No. 725843
**Gibson Consumer Law Group, LLC**
4279 Roswell Road
Suite 208-108
Atlanta, GA 30342
Telephone: (678) 642-2503
marybeth@gibsonconsumerlawgroup.com

Mariya Weekes*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
201 Sevilla Avenue, 2nd Floor
Coral Gables, FL  33134
Tel:  (786) 879-8200
Fax: (786) 879-7520
mweekes@milberg.com

*Settlement Class Counsel*

*\*Pro hac vice admission*

## <u>CERTIFICATE OF SERVICE AND</u>
## <u>LOCAL RULE 7.1(D) CERTIFICATION</u>

I hereby certify that on March 31, 2025, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will send notification of such filing and effectuate service to all counsel of record in this matter, pursuant to Local Rule 5.1.

I further certify that this Motion has been prepared with one of the fonts and point selections approved by the Court in Local Rule 5.1(C).

<u>/s/ *MaryBeth V. Gibson*</u>
MaryBeth V. Gibson

*Settlement Class Counsel*