## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

LAURA WILCOPOLSKI, individually
and on behalf of all others similarly
situated,

        Plaintiff,

   v.

FIRST ADVANTAGE FORM I 9
COMPLIANCE, LLC,

      Defendant.

Case No.: 1:24-cv-03235

Judge Leigh Martin May

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................... 1

II. SUMMARY OF SETTLEMENT ......................................................... 2

    A.    The Settlement Class ............................................................... 2

    B.    The Settlement Benefits ......................................................... 3

    C.    The Notice Program, As Implemented, Satisfies Due Process and Rule 23 ..................................................................................... 5

    D.    Fees and Expenses ................................................................. 7

III. THE SETTLEMENT SHOULD BE FINALLY APPROVED AS FAIR, REASONABLE, AND ADEQUATE ...................................................... 8

    A.    The *Bennett* Factors Weigh in Favor of Final Approval ...... 9

        1.    The Likelihood of Success at Trial: the Benefits of the Settlement Outweigh the Risks of Future Litigation ...... 9

        2.    The Benefits Provided by the Settlement Are Fair, Adequate and Reasonable Compared to Range of Possible Recoveries ........ 10

        3.    Continued Litigation Would be Time Consuming and Expensive ................................................................... 11

        4.    The Substance and Amount of Opposition to the Settlement and the Opinions of Class Counsel, Plaintiff and Absent Settlement Class Members Favor Final Approval. ...... 12

        5.    The Stage of the Proceedings at which the Settlement was Achieved ...................................................................... 13

    B.    The Rule 23(e) Factors Support Final Approval ................. 14

        1.    The Class was Adequately Represented ......................... 15

        2.    The Settlement was Negotiated at Arm's Length .......... 16

3.  The Settlement Provides Class Members with Significant Cash Benefits....................................................................17

4.  The Complexity, Expense, and Risk of Future Litigation .............17

5.  The Terms Relating to Attorneys' Fees are Reasonable................18

6.  No Other Agreements Exist under Rule 23(e)(3) .........................20

7.  Class Members are Treated Equitably Relative to Each Other .............................................................................20

IV. THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS .................20

A.  The Rule 23(a) Requirements are Satisfied ......................................20

B.  The Rule 23(b)(3) Requirements are Satisfied...................................23

# TABLE OF AUTHORITIES

**CASE(S)**                                                                      **PAGE(S)**

*Alghadeer Bakery & Marker, Inc. v. Worldpay US, Inc.*,
    No. 1:18-cv-02688-MLB, 2020 WL 10935986 (N.D. Ga. June 3, 2020) ...........19

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) .................................................................................... 23, 25

*Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*,
    211 F.R.D. 457 (S.D. Fla. 2002) .................................................................15

*Bennett v. Behring Corp.*,
    737 F.2d 982 (11th Cir. 1984) .....................................................................9

*Cabot E. Broward 2 LLC v. Cabot*, No.,
    16-61217-CIV, 2018 WL 5905415 (S.D. Fla. Nov. 9, 2018).............................19

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
    258 F.R.D. 545 (N.D. Ga. 2007).................................................................15

*Cotter v. Checkers Drive-In Restaurants, Inc.*,
    No. 8:19-CV-1386-VMC-CPT, 2021 WL 3773414 (M.D. Fla. Aug. 25, 2021) .8, 11

*Dickens v. GC Servs. Ltd. P'ship*,
    706 F. App'x 529 (11th Cir. 2017) ...................................................................25

*Francisco v. Numismatic Guaranty Corp. of Am.*,
    No. 06-616677-CIV, 2008 WL 649124 (S.D. Fla. Jan. 31, 2008) .....................17

*Henderson v. Emory Univ.*,
    No. 1:16-CV-02920-CAP, 2020 WL 9848975 (N.D. Ga. Nov. 4, 2020).............7

*In re Arby's Rest. Grp., Inc. Data Sec. Litig.*,
    No. 1:17-cv-1035-WMR, 2019 WL 2720818 (N.D. Ga. June 3, 2019).............11

*In re Checking Acct. Overdraft Litig.*,
    307 F.R.D. 656 (S.D. Fla. 2015).................................................................22

iv

*In re Checking Acct. Overdraft Litig.*,
   830 F. Supp. 2d 1330 (S.D. Fla. 2011) .................................................................8

*In re: Checking Acct. Overdraft Litig.*,
   1:09-MD-02036-JLK, 2013 WL 11320088 (S.D. Fla. Aug. 2, 2013)................13

*In re Citrix Data Breach Litig.*,
   No. 19-61350-CIV, 2021 WL 2410651 (S.D. Fla. Jun 11, 2021) ......................11

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
   No. 1:17-MD-2800-TWT, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020) ..... 21, 22

*In re Equifax Inc. Customer Data Security Breach Litig.*,
   999 F.3d 1247 (11th Cir. 2021) .........................................................................23

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
   MDL No. 09-2046, 2012 WL 896256 (S.D. Tex. Mar. 14, 2012) ......................18

*In re Home Depot, Inc. Customer Data Security Breach Litigation*,
   2016 WL 6902351 (N.D. GA August 23, 2016) .................................... 13, 21, 22

*In re Lincare Holdings Inc. Data Breach Litig.*,
   No. 8:22-cv-01472, 2024 WL 3104286 (M.D. Fla. June 24, 2024)....................19

*In re TJX Cos. Retail Sec. Breach Litig.*,
   524 F. Supp. 2d 83 (D. Mass. 2007) ..................................................................18

*Lipuma v. American Express Co.*,
   406 F. Supp. 2d 1298 (S.D. Fla. 2005) ..............................................................13

*Lone Star Nat'l Bank N.A. v. Heartland Payment Sys., Inc.*,
   729 F.3d 421 (5th Cir. 2013) .............................................................................18

*Lunsford v. Woodforest Nat'l Bank*,
   No. 1:12-cv-103, 2014 WL 12740375 (N.D. Ga. May 19, 2014) ......................19

*Manno v. Healthcare Revenue Recovery Grp., LLC*,
   289 F.R.D. 674 (S.D. Fla. 2013).........................................................................21

*Mashburn v. National Healthcare, Inc*,
　684 F. Supp. 679 (M.D. Ala. April 8, 1988)........................................................12

*McWhorter v. Ocwen Loan Servicing LLC*,
　No. 2:15-cv-01831, 2019 WL 9171207 (N.D. Ala. Aug. 1, 2019) ....................20

*Morgan v. Pub. Storage*,
　301 F. Supp. 3d 1237 (S.D. Fla. 2016) .................................................... 10, 12, 19

*Sacoccio v. JP Morgan Chase Bank, N.A.*,
　297 F.R.D. 683 ....................................................................................................12

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*,
　601 F.3d 1159 (11th Cir. 2010) ..........................................................................24

*SELCO Cmty. Credit Union v. Noodles & Co.*,
　267 F. Supp. 3d 1288 (D. Colo. 2017)................................................................17

*Wal-Mart Stores, Inc. v. Dukes*,
　564 U.S. 338 (2011)............................................................................................21

*Waters v. Int'l Precious Metals, Corp.*,
　190 F.3d 1291 (11th Cir. 1999) ..........................................................................19

*Wolff v. Cash 4 Titles*, No.,
　03-22778-CIV, 2012 WL 5290155 (S.D. Fla. Sept. 26, 2012) ...........................18

**STATUTES**

28 U.S.C. § 1715 ...........................................................................................................7

**RULES**

Fed. R. Civ. P. 23 ......................................................................................................5, 7

Fed. R. Civ. P. 23(a)................................................................................................ 20, 23

Fed. R. Civ. P. 23(a)(1)...............................................................................................20

Fed. R. Civ. P.  23(a)(2)...............................................................................................21

Fed. R. Civ. P. 23(a)(3)..............................................................................22

Fed. R. Civ. P. 23(a)(4)....................................................................... 22, 23

Fed. R. Civ. P. 23(b)(3)..................................................................... 23, 24, 25

Fed. R. Civ. P. 23(b)(3)(D)......................................................................23

Fed. R. Civ. P. 23(c)(2)............................................................................6

Fed. R. Civ. P. 23(c)(2)(B) ......................................................................6

Fed. R. Civ. P. 23(e).........................................................................8, 17

Fed. R. Civ. P. 23(e)(2) ................................................................. 1, 8, 15

Fed. R. Civ. P. 23(e)(2)(A-D) ...............................................................14

Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv)...........................................................14

Fed. R. Civ. P. 23(e)(3) ..................................................................... 14, 20

## I.    INTRODUCTION

Plaintiff moves for final approval of the Settlement with Defendant First Advantage Form I9 Compliance, LLC ("Defendant" or "Form I-9"). The Settlement, if approved by the Court, will resolve approximately one hundred ninety-three thousand (193,000) Class Members' claims (including Plaintiff) against Defendant arising from the Cybersecurity Incident.

The terms of the Settlement are included in the Settlement Agreement (hereinafter, "Settlement" or "SA"). ECF No. 25-2.[1] The Court previously granted preliminary approval of the proposed Settlement and Notice Program on January 13, 2025. (ECF No. 26). Notice of the Settlement has now been disseminated to Class Members under the Notice Program set forth in the Settlement Agreement and detailed in the Settlement Administrator's declaration in support of preliminary approval. ECF No. 25-3, Exhibit B, at p. 34. The Settlement is the result of months of on-going and arm's-length negotiations and hard bargaining that produced a Settlement that is fair, reasonable, and adequate and meets and/or exceeds the established legal standards governing final approval. Fed. R. Civ. P. 23(e)(2).

---

[1] Unless defined, capitalized terms have the same meaning attributable to them in the Settlement Agreement. ECF No. 25-2.

## II.    SUMMARY OF SETTLEMENT

This Settlement would resolve all claims related to the Cybersecurity Incident on behalf of the Settlement Class. ECF No. 25-2, Settlement Agreement "SA".

### A.    The Settlement Class

The Court's Preliminary Approval Order defines the Settlement Class as:

All persons residing in the United States whose PII may have been compromised in the Cybersecurity Incident.

ECF No. 26 ¶ 1. Excluded from the Settlement Class are (a) all persons who are employees, directors, officers, and agents of Form I-9; (b) governmental entities; (c) the Judge assigned to the Action, that Judge's immediate family, and Court staff; and (d) those persons who opt-out of the Settlement in accordance with the terms of this Agreement. *Id.*; SA ¶ 54. The Settlement Class is comprised of approximately 193,253 individuals nationwide. *See* **Exhibit 1**, Declaration of Angeion Group, LLC ("Angeion"), the Settlement Administrator. ("Angeion Decl."). Angeion Decl. ¶¶ 6-7. Under the Proposed Settlement, Defendant agreed to pay a total of $650,000.00 into the Settlement Fund, which will be used to pay Class Members' claims and for Identity Monitoring for Settlement Class Members who elect it.   SA ¶ 66. Additionally, the Settlement Fund will be used to pay for any attorneys' fees, expenses, and the Settlement Administration Costs, as approved by the Court. SA ¶ 35.

2

**B.    The Settlement Benefits**

When submitting a Valid Claim, Settlement Class Members must choose either Cash Payment A or Cash Payment B. Settlement Class Members may also elect to receive Identity Monitoring in accordance with the terms set forth in the Settlement Agreement and below. SA ¶ 63. Cash Payments will be subject to a *pro rata* increase from the Net Settlement Fund in the event the amount of Valid Claims is insufficient to exhaust the entire Net Settlement Fund. *Id.* Similarly, in the event the amount of Valid Claims exhausts the amount of the Net Settlement Fund, the amount of the Cash Payments may be reduced *pro rata* accordingly. *Id.* The Settlement Administrator must first pay for Identity Monitoring before distributing the funds in the Net Settlement Fund for Cash Payments. *Id.* In the unexpected event the value of the Identity Monitoring on its own exhausts the amount of the Net Settlement Fund, the length of the Identity Monitoring provided will be reduced as necessary to bring the cost within the Net Settlement Fund. *Id.* If a Settlement Class Member does not submit a Valid Claim, the Settlement Class Member will release his or her claims against the Released Parties without receiving a Settlement Class Member Benefit. *Id.*

Under Cash Payment A, compensation for unreimbursed ordinary losses fairly traceable to the Cybersecurity Incident may be up to a total of $1,500.00 per person. SA ¶ 64(a). Settlement Class Members must submit documentation supporting their

Claims for ordinary losses. *Id.* This documentation may include receipts or other documentation not "self-prepared" by the claimant that documents the costs incurred. *Id.* Settlement Class Members shall not be reimbursed for expenses if they have been reimbursed for the same expenses by another source, including compensation provided in connection with the identity monitoring services offered as part of the notification letter provided by Form I-9. *Id.* These ordinary losses may include out of pocket expenses incurred as a result of the Cybersecurity Incident, and fees for credit reports, credit monitoring, or other identity monitoring or insurance product purchased between May 31, 2024, and the date of the Claim Form Deadline.

Under Cash Payment A, compensation for extraordinary losses may be up to a total of $5,000.00 per Settlement Class Member, if the extraordinary loss: (i) is an actual, documented and unreimbursed monetary loss due to fraud or identity theft; (ii) is fairly traceable to the Cybersecurity Incident; (iii) occurred after the Cybersecurity Incident and before the Claim Form Deadline; (iv) is not already covered by one or more of the ordinary loss categories, and (v) the Settlement Class Member made reasonable efforts to avoid, or seek reimbursement for, the loss, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance. SA ¶ 64(b)

Instead of selecting Cash Payment A, a Settlement Class Member may elect

to receive Cash Payment B, which is a flat payment in the amount of $50.00. S.A. ¶ 65.

In addition to Cash Payment A or Cash Payment B, Settlement Class Members may also make a Claim for Identity Monitoring. Settlement Class Members who did not elect to receive the Experian identity monitoring services previously offered by the Defendant in connection with the Settlement Class Member's Cybersecurity Incident notification letter may elect to receive up to three years of Identity Monitoring. SA ¶ 66. Settlement Class Members who elected to receive 24 months of identity monitoring services previously offered by Form I-9 in connection with its initial Cybersecurity Incident notification letter may elect to receive an additional one year of Identity Monitoring. *Id.* The Identity Monitoring includes real time monitoring of the credit file at a single bureau, dark web scanning with notification if evidence of the individual's Personal Information is found, identity fraud loss insurance (no deductible) up to $1 million, access to fraud specialists to help investigate instances of identity theft, and identity theft restoration services. *Id.*

The Release in this case is tailored to the claims that have been pleaded or could have been pleaded and becomes final upon the date judgment becomes final. Settlement Class Members who do not opt-out from the Settlement Agreement will release claims related to the Cybersecurity Incident. SA ¶¶ 4, 98-102.

**C.    The Notice Program, As Implemented, Satisfies Due Process and Rule 23**

The Parties agreed to use Angeion as the Notice and Settlement Administrator. SA ¶¶ 52, 69. Based on the Court's preliminary approval Order (ECF No. 26), Class Counsel and the Settlement Administrator implemented a direct mail notice plan, including individual direct Email Notice and Postcard Notice to all members who could be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2). ECF No. 25-2, ¶ 73; *see* Angeion Decl. ¶¶ 8-17. Where email addresses were provided by Defendant for Settlement Class Members, Email Notice was sent by email to a total of 9,029 Settlement Class Members' email addresses. *Id.* ¶ 8. Settlement Class Members for which email addresses were not provided, or emails were undelivered (and a postal address was provided by Defendant), were mailed a Postcard Notice by mail. *Id.* ¶ 10. On February 13, 2025, the Settlement Administrator posted the Notice to the Settlement Website located at www.FormI9DataSettlement.com. *Id.* ¶ 15.  On February 13, 2025, the Settlement Administrator commenced the Notice Program to 193,253 Settlement Class Members. *Id.* ¶¶ 8-14. The Notice Program reached 95.9% of the 193,253 Settlement Class Members. *Id.* ¶14.[2] Accordingly, the Court should find that the Settlement Class was provided the best notice practicable under the circumstances, and that the

---

[2] This goes well beyond the 70% notice threshold that is often cited as meeting the requirements of Rule 23(c)(2)(B) and due process. Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, at 3 (2010), www.fjc.gov/sites/default/files/2012 /NotCheck.pdf.

Notice Plan, as implemented, satisfies the requirements of due process and Rule 23. *See, e.g.*, *Henderson v. Emory Univ.*, No. 1:16-CV-02920-CAP, 2020 WL 9848975, at *3 (N.D. Ga. Nov. 4, 2020).

Pursuant to 28 U.S.C. § 1715, the Settlement Administrator, on behalf of Defendant, coordinated and administered the distribution and mailing of CAFA Notice on December 2, 2024. Angeion Decl. ¶ 5. The Settlement Fund will be used to pay for Settlement Administration Fees. S.A. ¶ 35.

Class Members had up to and including April 14, 2025, to decide whether to object or to exclude themselves from the Settlement. ECF 25-2, SA ¶¶ 40-41. Class Members wishing to opt out of the Settlement Class were required to submit a Request for Exclusion to the Settlement Administrator postmarked no later than April 14, 2025, as described in the Long Notice. ECF 25-2, SA¶ 41.

Any Settlement Class Member who wished to object to the Settlement or opt-out was required to submit a timely written notice of his or her objection or opt-out to the Court and the Settlement Administrator no later than April 14, 2025. SA ¶¶ 40-41; Settlement Administrator Decl. ¶ 20-21.

### D.    Fees and Expenses

On March 31, 2025, Class Counsel filed Plaintiff's Motion for Attorneys' Fees and Litigation Expenses. ECF No. 28. Class Counsel seek $216,666.66, or

33.33% of the Settlement Fund to proposed Class Counsel for Attorneys' Fees and $1,432.85 in Expenses. *Id.*

## III.  THE SETTLEMENT SHOULD BE FINALLY APPROVED AS FAIR, REASONABLE, AND ADEQUATE.

Class actions may be settled only upon the court's determination that the settlement is "fair, reasonable, and adequate" after considering a number of factors. Fed. R. Civ. P. 23(e)(2). A settlement is fair, reasonable, and adequate when the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330, 1344 (S.D. Fla. 2011) (citation omitted). A court's analysis should be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement." *Cotter v. Checkers Drive-In Restaurants, Inc.*, No. 8:19-CV-1386-VMC-CPT, 2021 WL 3773414, at *7 (M.D. Fla. Aug. 25, 2021) (citation omitted). "The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain." *Id.*

In analyzing the fairness, reasonableness, and adequacy of a class action settlement under Rule 23(e), courts in this circuit look to six factors identified by the Eleventh Circuit to evaluate whether to grant final approval of class action settlement: "(1) the likelihood of success at trial; (2) the range of possible recovery;

8

(3) the point below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

    **A.**    **The *Bennett* Factors Weigh in Favor of Final Approval**

        **1.**    **The Likelihood of Success at Trial: the Benefits of the Settlement Outweigh the Risks of Future Litigation**

The Cash Payments to Class Members for potentially several types of alleged injury are a strong recovery for Class Members compared to the backdrop of uncertainty that continued litigation brings. For example, in the absence of the Settlement, Plaintiff would need to successfully overcome Defendant's motion to dismiss, petition the Court for class certification, and survive a motion for summary judgment before having their day in court for a possible trial. Continued litigation of this matter would bring uncertain results and risks. A Settlement now on the terms Plaintiff negotiated in the form of a non-reversionary $650,000.00 common fund providing cash benefits to Class Members in addition to Identity Monitory and cybersecurity enhancements compares well against the risk inherent with future litigation in a data breach class action. Accordingly, this factor supports final approval.

### 2. The Benefits Provided by the Settlement Are Fair, Adequate and Reasonable Compared to Range of Possible Recoveries

"In determining whether a settlement is fair in light of the potential range of recovery, the Court is guided by the important maxim [ ] that the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1250 (S.D. Fla. 2016) (citation omitted). "It is important that the Court weigh the benefits Class members will receive from the settlement against the risks of moving forward and recovering nothing." *Id.*

The $650,000.00 non-reversionary common fund for the Settlement Class of approximately 193,253 individuals, *i.e.*, approximately $3.36 per person, compares well with other recent data breach cases. The chart below compares the amount recovered per Settlement Class Member against the amount recovered in several other recent data breach class action settlements[3] and highlights the beneficial result achieved for the Settlement Class:

| Case Name | Case Number | Settlement Amount | Class Size | Per Person |
|---|---|---|---|---|
| *Sherwood v. Horizon Actuarial Services, LLC* | No. 1:22-cv-1495 (N.D. Ga.) | $8,733,446.36 | 4,386,969 | $1.99 |
| *Kostka v. Dickey's Barbecue Restaurants, Inc.* | No. 3:20-CV-3424 | $2,350,000 | 725,000 | $3.24 |

---

[3] Counsel recognize that different types of impacted data and other factors may impact the settlement terms of every data security incident class action.

| *In re Wright & Filippis, LLC Data Security Breach* | No. 2:22-cv-12908-SFC | $2,900,000 | 877,584 | $3.30 |
| *Winstead v. ComplyRight, Inc.* | No. 1:18-cv-04990 | $3,025,000 | 665,689 | $4.45 |
| *In re C.R. England, Inc. Data Breach Litigation* | No. 2:22-cv-374 (D. Utah) | $1,400,000 | 224,572 | $6.23 |

Given the reasonableness of the Settlement when weighed against the risks of continued litigation, the Settlement is well within the range of reasonableness warranting final approval.

### 3. Continued Litigation Would be Time Consuming and Expensive

Data breach class actions are complex and remain unpredictable. *See Cotter v. Checkers Drive-In Rests., Inc.*, No. 8:19-cv-1386, 2021 WL 3773414, at *12 (M.D. Fla. Aug. 25, 2021) (noting data breach class actions present "serious risks" due, in part, to "the ever-developing law surrounding data breach cases"); *In re Citrix Data Breach Litig.*, No. 19-61350-CIV, 2021 WL 2410651, at *3 (S.D. Fla. Jun 11, 2021) ("Data breach cases in particular present unique challenges with respect to issues like causation, certification, and damages."); *In re Arby's Rest. Grp., Inc. Data Sec. Litig.*, No. 1:17-cv-1035-WMR, 2019 WL 2720818, at *3 (N.D. Ga. June 3, 2019) ("Further, data breach litigation involves the application of unsettled law with disparate outcomes across states and circuits. Georgia law, in particular, presents challenges."). This case is no exception. The pursuit of nationwide claims

and relief presented complex issues of law and fact. These issues underscore the fact that continued litigation would be time consuming and expensive and weigh in favor of final approval.

> **4.    The Substance and Amount of Opposition to the Settlement and the Opinions of Class Counsel, Plaintiff and Absent Settlement Class Members Favor Final Approval.**

The fairness of the Settlement is enthusiastically endorsed by experienced Class Counsel and supported by the Settlement Class Representative. This is strong evidence that the Settlement is fair, reasonable, and adequate. *Morgan*, 301 F. Supp. 3d at 1251 ("The endorsement of well-informed, experienced class action attorneys is strong support for the final approval of a settlement."); *Mashburn v. National Healthcare, Inc*, 684 F. Supp. 679 (M.D. Ala. April 8, 1988) ("If plaintiffs' counsel did not believe that these factors all pointed substantially in favor of this settlement as presently structured, this Court is certain that they would not have signed their names to the settlement agreement.").

Additionally, the Notice Program reached 95.9% of the 192,253 Settlement Class Members. Angeion Decl. ¶ 14.  There have only been five (5) exclusions and no objections. *Id.* ¶¶ 21-22. The reaction of the class is an important factor in settlement approval: "a low number of objections suggests that the settlement is reasonable, while a high number of objections would provide a basis for finding that the settlement was unreasonable." *Sacoccio v. JP Morgan Chase Bank, N.A.*, 297

F.R.D. at 694 (finding objections of 16 class members and 122 exclusions did not weigh against approval), *quoting Lipuma v. American Express Co.,* 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005).

Given that there are no objections, only five (5) timely exclusion requests, and with the claim deadline being a month away, the fifth *Bennett* factor weighs in favor of final approval as the Class has responded favorably to the Settlement and its cash benefits. *See, e.g.*, *In re Home Depot, Inc. Customer Data Security Breach Litigation*, 2016 WL 6902351, at *4 (N.D. GA August 23, 2016) (finding that the number of objectors amounts to an "infinitesimal percentage" of the class indicates "strong support for the settlement" and weighs strongly in favor of final approval); *In re: Checking Acct. Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2013 WL 11320088, at *10 (S.D. Fla. Aug. 2, 2013) ("[T]he Court also finds it telling that, of over 27,490 members of the Settlement Class, only two members of the Settlement Class have requested to be excluded from, and no Settlement Class Members have objected to the Settlement.").

### 5. The Stage of the Proceedings at which the Settlement was Achieved.

Plaintiff had sufficient information to thoroughly evaluate the merits of the case and negotiate a favorable settlement. Plaintiff and her counsel were well informed when negotiating the resolution of this Litigation. *See* Joint Decl. Plaintiff submitted a list of settlement discovery requests to Defendant for the purpose of

13

gaining sufficient information to make a well-informed demand. *Id.* ¶ 7. Before submitting their demand for a class-wide settlement, Plaintiff knew the size of the class, the data elements potentially impacted by the Cybersecurity Incident, a description of security enhancements implemented and planned and related spending on cyber security measures. *Id.* ¶¶ 7-8. This information gave Plaintiff the ability to analyze her and the Class's claims and to understand the potential for class-wide damages. *Id.* Accordingly, Plaintiff had sufficient information to evaluate the merits of her claims. This factor weighs in favor of final approval.

### B.    The Rule 23(e) Factors Support Final Approval

Federal Rule 23(e)(2) also identifies several factors that must be considered when determining whether a class action settlement is fair, reasonable, and adequate: "whether (a) the class representatives and class counsel have adequately represented the class; (b) the proposal was negotiated at arm's length; (c) the relief provided for the class is adequate . . . ; and (d) the proposal treats all class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A-D). In considering whether the settlement relief provided is sufficient, courts must consider "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P.

14

23(e)(2)(C)(i)-(iv).  In considering these factors, "[t]here is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation of being most complex." *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002).

### 1.    The Class was Adequately Represented

The first step in finally approving a class action settlement under Rule 23(e)(2) involves two questions: "(1) whether the [class representatives] have interests antagonistic to the interests of other class members; and (2) whether the proposed class's counsel has the necessary qualification and experience to lead the litigation." *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 555 (N.D. Ga. 2007). For purposes of settlement, Plaintiff is an adequate representative for the Class because she asserted claims against Defendant due to her personally identifiable information being impacted in the Cybersecurity Incident – the same Cybersecurity Incident that also impacted the personally identifiable information of the Class. Accordingly, for these purposes the Class Representative has the same claims and same cause of her injuries as the rest of the Class Members. Furthermore, Plaintiff stayed apprised of the case's progress and remained engaged in this Litigation by reviewing the allegations in the Complaint and reviewing and approving the terms of the Settlement Agreement. Joint Decl. ¶ 50.

15

Class Counsel are appropriately qualified to lead this Litigation on behalf of Plaintiff and the Class. Class Counsel have represented plaintiffs in state and federal courts across the county in data privacy class actions and have achieved many recent favorable results for plaintiffs. Joint Decl. ¶¶ 26-33. Class Counsel's skill in utilizing informed settlement discovery requests to receive the information necessary to make an informed demand and in procuring tangible cash benefits for Class Members further demonstrates that Class Counsel are sufficiently qualified to serve as Class Counsel in this Litigation. *Id.* ¶¶ 26-33, 56.

### 2.    The Settlement was Negotiated at Arm's Length

The Settlement was negotiated over several months with Plaintiff submitting a demand to Defendant only after receiving details on the class size, learning details regarding the data elements impacted by the Cybersecurity Incident, and ascertaining that Defendant had potentially credible defenses. Joint Decl. ¶¶ 6-9. The Settlement is the result of months of on-going and arm's-length negotiations and hard bargaining. Ultimately, Plaintiff was able to achieve her preferred settlement structure of a non-reversionary common fund that will permit Class Members to receive Cash Payments and the potential for a *pro rata* increase to the *pro rata* Cash Payment to the extent any Settlement Funds remain unclaimed through the claims process. These facts demonstrate that the Settlement was negotiated at arm's length

with the assistance of counsel for each side who are experienced in handling data privacy class actions.

### 3. The Settlement Provides Class Members with Significant Cash Benefits

The Settlement provides Class Members with cash benefits including up to $1,500.00 in documented Out-of-Pocket Losses and $5,000.00 in Extraordinary Losses or a Cash Payment of $50.00. In addition to Cash Payment A or Cash Payment B, Settlement Class Members may also make a Claim for Identity Monitoring. Settlement Class Members who did not elect to receive the Experian identity monitoring services previously offered by the Defendant in connection with the Settlement Class Member's Cybersecurity Incident notification letter may elect to receive up to three years of Identity Monitoring.

### 4. The Complexity, Expense, and Risk of Future Litigation

"Class actions are inherently complex to prosecute because the legal and factual issues are complicated and uncertain in outcome." *Francisco v. Numismatic Guaranty Corp. of Am.*, No. 06-616677-CIV, 2008 WL 649124, at *15 (S.D. Fla. Jan. 31, 2008). Data breach cases are complex and carry significant risk in that some cases have failed at the dismissal or class certification stages.[4] *See, e.g., SELCO*

---

[4] Understanding that there is overlap between *Bennett* factors and the Rule 23(e) factors relating to the complexity, expense, and risks of future litigation, Plaintiff incorporates her arguments above under Section III.B.1.c. above to avoid repetition.

*Cmty. Credit Union v. Noodles & Co.*, 267 F. Supp. 3d 1288, 1292 (D. Colo. 2017) (dismissing a nationwide class action for a data breach at Noodles & Co, holding Colorado's economic loss rule prohibited tort damages caused by the data breach); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, MDL No. 09-2046, 2012 WL 896256 (S.D. Tex. Mar. 14, 2012) (after three rounds of dismissal motions, dismissing among other claims, negligence), *rev'd sub nom.*, *Lone Star Nat'l Bank N.A. v. Heartland Payment Sys., Inc*., 729 F.3d 421, 424 (5th Cir. 2013) (concluding that New Jersey's economic loss doctrine could not be applied at dismissal stage); *In re TJX Cos. Retail Sec. Breach Litig.*, 524 F. Supp. 2d 83 (D. Mass. 2007) (dismissing claims for negligence and negligence per se), *aff'd*, 564 F.3d 489 (1st Cir. 2009), and 246 F.R.D. 389, 400 (denying class certification because individual issues of reliance, causation, and damages predominated).

### 5.    The Terms Relating to Attorneys' Fees are Reasonable

Here, the attorneys' fees request of one-third of the $650,000.00 common fund is consistent with the Settlement Agreement, the content of the Notices, and the Motion for Attorneys' Fees and Litigation Expenses that were filed with the Court and posted on the Settlement Website. Furthermore, Class Counsel's attorneys' fees request of one-third of the common fund is consistent with fee awards in similar common fund settlements within this Circuit. *See, e.g.*, *See, e.g., Wolff v. Cash 4 Titles*, No. 03-22778-CIV, 2012 WL 5290155, at 5-6 (S.D. Fla. Sept. 26, 2012)

("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide-roughly one-third"); *Tracy v. Eletka Inc.*, No. 1:21-cv-02851 (N.D. Ga. Jan. 7, 2025) (same); *Sherwood v. Horizon Actuarial Services, LLC*, No. 1:22-cv-1495-ELR (ECF No. 94) (N.D. Ga. Apr. 2, 2024) (approving attorneys' fees of $2,911,148.79 consisting of 1/3 of the $8,733,446.36 settlement fund in a data breach class action); *Abrams v. Savannah College of Art & Design, Inc.*, No. 1:22-cv-4297 (N.D. Ga. Sept. 22, 2023) (ECF No. 29); *In re Lincare Holdings Inc. Data Breach Litig.*, No. 8:22-cv-01472, 2024 WL 3104286, at *3-4 (M.D. Fla. June 24, 2024) (approving attorneys' fees of $2,416,666.67 consisting of 1/3 of the $7,250,000 settlement fund in a data breach class action); *Alghadeer Bakery & Marker, Inc. v. Worldpay US, Inc.*, No. 1:18-cv-02688-MLB, 2020 WL 10935986, at *4 (N.D. Ga. June 3, 2020) ("The fee represents one-third of the $15 million cash settlement fund, which the Court finds to be reasonable and consistent with awards in similar cases in this Circuit."); *Waters v. Int'l Precious Metals, Corp.*, 190 F.3d 1291, 1292-98 (11th Cir. 1999) (affirming attorneys' fees of 1/3 of the $40 million common fund); *Lunsford v. Woodforest Nat'l Bank*, No. 1:12-cv-103, 2014 WL 12740375, at *15 (N.D. Ga. May 19, 2014) (fee award of 1/3 of the common fund); *Cabot E. Broward 2 LLC v. Cabot*, No. 16-61217-CIV, 2018 WL 5905415, at *7-8 (S.D. Fla. Nov. 9, 2018) (awarding fee of $33,333,333 of the $100 million common fund); *Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1257 (S.D. Fla. 2016) (noting

19

that "a fee award of 33% … is consistent with attorneys' fees awards in federal class actions in this Circuit."). Class Counsel's attorneys' fee request of 1/3 ($216,666.66) of the $650,000 common fund is reasonable because it is within the range typically approved by courts within the Eleventh Circuit.

### 6. No Other Agreements Exist under Rule 23(e)(3)

The Settlement Agreement and attachments are the only agreements impacting the Settlement. Accordingly, there are no additional agreements for the Court to consider. This factor also supports final approval.

### 7. Class Members are Treated Equitably Relative to Each Other

Each Class Member is eligible to submit a claim for one or more cash settlement benefits. Furthermore, all Class Members were afforded ample opportunity to opt-out or object to the Settlement. *See McWhorter v. Ocwen Loan Servicing LLC*, No. 2:15-cv-01831, 2019 WL 9171207, at *12 (N.D. Ala. Aug. 1, 2019) (noting that class members' ability to exclude themselves from a settlement indicates equitable treatment of class members and supports final approval).

## IV. THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

### A. The Rule 23(a) Requirements are Satisfied

**Numerosity**: The numerosity requirement of Rule 23(a)(1) is satisfied where the class is so numerous that joinder of all class members is impracticable. Fed. R. Civ. P. 23(a)(1). As a rule of thumb, in the Eleventh Circuit, "less than twenty-one

20

is inadequate, more than forty [is] adequate, with numbers between varying according to the other factors." *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 684 (S.D. Fla. 2013). Here, joinder of over 193,000 Settlement Class Members would certainly be impracticable, and thus, the numerosity element is satisfied.

**Commonality:** The commonality requirement of Rule 23(a)(2) "requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-350 (2011).

Courts in this District have previously addressed this requirement in the context of data breach class actions and found that it is readily satisfied. *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800-TWT, 2020 WL 256132, at *12 (N.D. Ga. Mar. 17, 2020); *Home Depot*, 2016 WL 6902351, at *2. Indeed, the common issues present here include: whether Defendant had a legal duty to adequately protect Plaintiff's and Settlement Class Members' PII; whether Defendant breached that legal duty; and whether Defendant knew or should have known that Plaintiff's and Settlement Class Members' PII was vulnerable to attack. All Class Members' claims arise out of Defendant's conduct resulting in the

Cybersecurity Incident. Accordingly, common questions of law and fact abound. *See Home Depot*, 2016 WL 6902351, at *2.

**Typicality:** Rule 23(a)(3)'s typicality requirement is satisfied where the claims of the representative parties are typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). Courts in this District have previously addressed this requirement and have found that it "is readily met in settlements of nationwide data breach class actions." *Equifax*, 2020 WL 256132, at *12. Here, Plaintiff's and Settlement Class Members' claims arise from the same Cybersecurity Incident and Defendant's conduct in connection with the Cybersecurity Incident. The claims are further based on the same overarching legal theory that Defendant failed to adequately secure their PII. Accordingly, typicality is satisfied.

**Adequacy of Representation**: As mentioned above, Plaintiff and Class Counsel have adequately represented the Class. Rule 23(a)(4)'s requirement is satisfied when "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This requirement is met when (i) the class representatives have no interests conflicting with the class; and (ii) the representatives and their attorneys will properly prosecute the actions." *In re Checking Acct. Overdraft Litig.*, 307 F.R.D. 656, 672 (S.D. Fla. 2015).

Here, adequacy is easily satisfied. First, Plaintiff has no interests adverse or "antagonistic" to absent Settlement Class Members. Plaintiff seeks to hold

Defendant accountable for, among other things, the failure to safeguard Plaintiff's and Settlement Class Members' PII. Second, Plaintiff has retained lawyers who the Court has already recognized as abundantly qualified and experienced. Accordingly, Rule 23(a)(4)'s adequacy requirement is satisfied. With all four of Rule 23(a)'s requirements met in this case, final class certification is warranted.

### B.    The Rule 23(b)(3) Requirements are Satisfied

Final class certification is also appropriate because Plaintiff and the Class meet Rule 23(b)(3)'s predominance and superiority requirements for purposes of this settlement. Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *In re Equifax Inc. Customer Data Security Breach Litig.*, 999 F.3d 1247, 1275 (11th Cir. 2021). When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. P. 23(b)(3)(D), for the proposal is that there be no trial.").

23

For purposes of settlement, the common factual and legal questions all cut to the issues "at the heart of the litigation." Indeed, the answers to these questions are not tangential or theoretical such that the litigation will not be advanced by certification. Rather, they go right to the center of the controversy, and the answers will be the same for each Class Member. As such, because the class-wide determination of this issue will be the same for everyone and will determine whether any class member has a right of recovery, the predominance requirement is readily satisfied for settlement purposes.

The second prong of Rule 23(b)(3)—that a class action is superior to other available methods for the fair and efficient adjudication of the controversy—is also readily satisfied for the purpose of this settlement. *See* Fed. R. Civ. P. 23(b)(3). A superiority analysis pursuant to Rule 23(b)(3) involves an examination of "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1183-84 (11th Cir. 2010) (internal quotation omitted). The Agreement provides Settlement Class Members with certain relief and contains well-defined administrative procedures to ensure due process. This includes the right of any Class Member to object to it or to request exclusion. Moreover, there is no indication that Class Members have an interest in individual litigation or an incentive to pursue their claims individually, given the

amount of damages likely to be recovered relative to the resources required to prosecute such an action. *See Dickens v. GC Servs. Ltd. P'ship*, 706 F. App'x 529, 538 (11th Cir. 2017) (describing "the ways in which the high likelihood of a low per-class-member recovery militates in favor of class adjudication").

For purposes of settlement, adjudicating individual actions here is impracticable. The amount in dispute for individual class members is too small, the technical issues are too complex, and the required expert testimony and document review would be far too costly. In no case are the individual amounts at issue sufficient to allow anyone to file and prosecute an individual lawsuit—at least not with the aid of competent counsel. Instead, the individual prosecution of Class Members' claims would be prohibitively expensive, and, if filed, would needlessly delay resolution and lead to inconsistent rulings. Because this Litigation is being settled on a class-wide basis, such theoretical inefficiencies are resolved, and the Court need not consider further issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there will be no trial.").

Thus, the Court should grant final approval of class action settlement including finally certifying the Settlement Class under Rule 23(b)(3).

## **CONCLUSION**

For these reasons, Plaintiff and Class Counsel respectfully ask the Court to enter an Order Granting Final Approval of Class Action Settlement. A proposed Order Granting Final Approval of Class Action Settlement is attached as **Exhibit 2**.

Dated: April 21, 2025                    Respectfully submitted,

**GIBSON CONSUMER LAW GROUP, LLC**
*/s/ MaryBeth V. Gibson*
MaryBeth V. Gibson
Georgia Bar No. 725843
4279 Roswell Road, Suite 208-108
Atlanta, GA 30342
(678) 642-2503
marybeth@gibsonconsumerlawgroup.com

MARIYA WEEKES (*Pro Hac Vice*)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
201 Sevilla Avenue, 2nd Floor
Coral Gables, FL 33134
Tel: (786) 879-8200
Fax: (786) 879-7520
Email: mweekes@milberg.com

*Class Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE AND</u>
## <u>LOCAL RULE 7.1(D) CERTIFICATION</u>

I hereby certify that on April 21, 2025, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will send notification of such filing and effectuate service to all counsel of record in this matter, pursuant to Local Rule 5.1.

I further certify that this Motion has been prepared with one of the fonts and point selections approved by the Court in Local Rule 5.1(C).

*/s/ MaryBeth V. Gibson*
MaryBeth V. Gibson
