## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

LAURA WILCOPOLSKI, individually and on behalf of all others similarly situated,

      Plaintiff,

  v.

FIRST ADVANTAGE FORM I 9 COMPLIANCE, LLC,

      Defendant.

Case No.: 1:24-cv-03235-LMM

Judge Leigh Martin May

## ORDER GRANTING PLAINTIFF'S
## UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION
## SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS
## AND MOTION FOR ATTORNEYS' FEES AND EXPENSES

**THIS CAUSE** comes before the Court on Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement and Certification of Settlement Class and Plaintiff's Motion for Attorneys' Fees and Expenses,[1] during the Final Approval Hearing on May 19, 2025, requesting entry of an order: (1) granting Final Approval to the Settlement; (2) certifying the Settlement Class for settlement purposes, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3); (3) affirming the appointments of Plaintiff as Class Representative and MaryBeth Gibson and Mariya Weekes as Class

---

[1] All capitalized terms used herein have the same meanings as those defined in the Settlement Agreement. ECF No. 25-2.

Counsel; (4) awarding Class Counsel attorneys' fees and expenses; (5) approving payment of the Settlement Administration Costs; (6) overruling timely objections, if any; and (7) entering final judgment dismissing the Action with prejudice and reserving jurisdiction over Settlement implementation.

Having already analyzed the Settlement in entering the Preliminary Approval Order (ECF No. 26) and having again carefully reviewed the Motion for Final Approval, the proposed Settlement and its exhibits, all relevant filings, the record, and the argument from the Parties' counsel, the Court finds the Settlement Class should be finally certified, the Settlement satisfies the Final Approval criteria, and the Motion for Attorneys' Fees and Expenses should be granted. Accordingly, it is hereby: **ORDERED AND ADJUDGED** that the Motion is **GRANTED** as set forth herein.

## BACKGROUND

The full procedural and factual background of this Action is detailed in the Motion for Final Approval and Motion for Preliminary Approval. ECF No. 23. Below is a summary of facts pertinent to the findings and rulings in this Final Approval Order.

The case arises from a recent Cybersecurity Incident involving Defendant, a limited liability company that assists its clients in completing the government required Form I-9 documents in connection with its clients' employees' employment.

On July 22, 2024, Plaintiff filed an action against Defendant for its failure to properly secure and safeguard the personally identifiable information that it collected and maintained as part of its regular business practices, including Plaintiff's and Class Members' names, dates of birth, addresses, hire dates, and Social Security numbers, (collectively defined herein as "PII"). Plaintiff asserted claims for negligence, breach of third-party beneficiary contract, unjust enrichment, negligence per se, statutory claims under Ga. Code Ann. § 13-6-11. ECF No. 1. In response to Plaintiff's complaint, Defendant filed a Motion to Dismiss and Memorandum of Law in Support. ECF 8, 8.1.

The Settlement is the result of months of on-going and arm's-length negotiations and hard bargaining. The Parties exchanged informal discovery, including, but not limited to, information about the allegations in the Complaint, the class size, the types of data impacted in the Cybersecurity Incident and information supporting Plaintiff's damages allegations. The Settlement terms are memorialized in the Agreement, which was negotiated at arm's length, in good faith, and without collusion by capable and experienced counsel with full knowledge of the facts, the law, and the inherent risks in the Action, and with the active involvement of Plaintiff.

The Parties filed a Joint Notice of Settlement with the Court on October 18, 2024. ECF No. 18. Over the next several months, the Parties worked diligently to finalize the Agreement and ancillary documents, executing it on November 15, 2024.

Specifically, the Settlement provides monetary relief that includes a non-reversionary all-cash Settlement Fund of $650,000.00. The Settlement Fund will be used to pay; (i) Settlement Class Member Benefits; (ii) any attorneys' fees and expenses awarded by the Court to Class Counsel; and (iii) all Settlement Administration Costs.

Plaintiff sought Preliminary Approval of the Settlement on behalf of the proposed Settlement Class. The Court granted the Motion for Preliminary Approval, conditionally certifying the Settlement Class and finding it was likely to grant Final Approval and approving a comprehensive Notice Program and Claims process. Following entry of the Preliminary Approval Order, the Parties and the Settlement Administrator implemented and completed the Notice Program. The Claims process is ongoing and will end on May 13, 2025.

Having completed the Notice Program, Plaintiff and Class Counsel filed the Motion for Final Approval. ECF No. 28. Only five (5) Settlement Class members have opted-out, who are identified on attached **Exhibit A**. Those Settlement Class members will not be bound by the Settlement or release any claims against First Advantage Form I9 Compliance, LLC. There were no objections submitted.

## LEGAL STANDARDS FOR CLASS SETTLEMENT APPROVAL

It is well established that "[a] class may be certified solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class

certification issue." *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 671 (S.D. Fla. 2006) (cleaned up). "There is a strong judicial policy in favor of settlement, in order to conserve scarce resources that would otherwise be devoted to protracted litigation." *Id.* In deciding whether to provisionally certify a settlement class, a court must consider the same factors that it would consider in connection with a proposed litigation class—*i.e.*, all Federal Rule of Civil Procedure 23(a) factors and at least one subsection of Federal Rule of Civil Procedure 23(b) must be satisfied— except that the Court need not consider the manageability of a potential trial, since the settlement, if approved, would obviate the need for a trial. *See id.* at 671–672.; *see also Diakos v. HSS Sys., LLC*, 137 F. Supp. 3d 1300, 1306 (S.D. Fla. 2015) (explaining a court evaluates whether certification of a settlement class is appropriate under Rule 23(a) and (b)); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Rule 23(a) requires: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a)(1)–(4). Rule 23(b)(3) requires that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Eleventh Circuit also requires that the proposed class is adequately defined and clearly ascertainable. *See Prado v. Bush*, 221 F.3d 1266,

1279 (11th Cir. 2000); *Little v. T-Mobile USA, Inc*., 691 F.3d 1302, 1304 (11th Cir. 2012).

If certification of a settlement class is appropriate, a court then determines if the proposal is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  To do so, the Court considers whether the following factors are met:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

*Id.*  Furthermore, the Eleventh Circuit "instruct[s] district courts to consider several additional factors called the *Bennett* factors."  *In re Equifax Inc. Customer Data Sec. Breach Litig*., 999 F.3d 1247, 1273 (11th Cir. 2021) (citing *Bennett v. Behring Corp*., 737 F.2d 982, 986 (11th Cir. 1984)). These additional factors are:

> [(a)] "there was no fraud or collusion in arriving at the settlement," and [(b)] the settlement was fair, adequate and reasonable, considering (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986 ("*Bennett* factors").

Courts have substantial discretion in approving a settlement agreement,

*Bennett*, <u>737 F.2d at 986</u>, and settlement negotiations that involve arm's-length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness. *See* Manual for Compl. Lit., Third, § 30.42 (West 1995) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." (cleaned up).

<u>**FINAL CERTIFICATION OF THE SETTLEMENT CLASS AND FINAL APPROVAL**</u>

The Court finds, for settlement purposes only that it should finally certify the proposed Settlement Class and enter this Final Approval Order because the Settlement Class and proposed Settlement satisfy the Rule 23(a), 23(b)(3), and 23(e) requirements and the *Bennett* factors. Nothing has changed since the Court granted Preliminary Approval. Additionally, the response from the Settlement Class has been overwhelmingly favorable.

A. <u>**Final Certification of the Settlement Class Is Appropriate.**</u>

As the Court found in the Preliminary Approval Order, when it concluded it was likely to certify the Settlement Class, the Court now finds, for settlement purposes only, that the Rule 23 factors are satisfied, and certification of the proposed Settlement Class is appropriate under Rule 23. The Court further finds that the Article III standing requirement is met here.

The Court therefore provisionally certifies the following Settlement Class:

All persons residing in the United States whose PII may have been compromised in the Cybersecurity Incident.

Excluded from the Settlement Class are (a) all persons who are employees, directors, officers, and agents of Form I-9; (b) governmental entities; (c) the Judge assigned to the Action, that Judge's immediate family, and Court staff; and (d) those persons who opt-out of the Settlement in accordance with the terms of this Agreement.

The Court will address each Rule 23(a) and 23(b)(3) factor in turn.

### 1.  The Rule 23(a) Factors Are Satisfied.

#### (i)  *Rule 23(a)(1) - Numerosity*

Rule 23(a)(1) requires the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The numerosity requirement is "generally a low hurdle" and, as a baseline, "less than twenty-one is inadequate . . . [and] more than forty is adequate[.]" *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009) (cleaned up). Here, the numerosity requirement of Rule 23(a)(1) is satisfied because the Settlement Class includes approximately one hundred ninety three thousand individuals. *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (numerosity generally satisfied where there are more than 40 class members); *In re Mednax Serv., Customer Data Sec. Breach Litig.*, No. 21-MD-02994-RAR, 2024 WL 1554329, at *4 (S.D. Fla. Apr. 10, 2024). The joinder of over one hundred thousand Settlement Class members would certainly be

impracticable, and thus numerosity is satisfied.

### (ii) Rule 23(a)(2) - Commonality

Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[C]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury," and the plaintiff's common contention "must be of such a nature that it is capable of class wide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (cleaned up). The commonality requirement is a "low hurdle." *See Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1356 (11th Cir. 2009).   Courts in this Circuit have previously addressed this requirement in the context of data breach class actions and found it satisfied. *See, e.g., Mednax*, 2024 WL 1554329, at *4 (commonality satisfied because claims turn on adequacy of defendants' data security to protect PII and PHI); *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-cv-61275, 2022 WL 17477004, at *4 (S.D. Fla. Dec. 5, 2022); *see also Equifax*, 999 F.3d at 1274–75, 1277 (affirming district court's certification of class, including finding of commonality).

Here, Plaintiff and Settlement Class members all had their PII impacted by the Cybersecurity Incident. Plaintiff's claims turn on whether Defendant's data security environment, was adequate to protect Plaintiff and the Settlement Class's

PII. These issues are common to the Settlement Class, are alleged to have injured all Settlement Class members in the same way and would generate common answers central to the viability of all claims were this case to proceed to trial. In other words, evidence to resolve said claims does not vary among Settlement Class members and can therefore be fairly resolved, for purposes of settlement, for all Settlement Class members at once. Thus, commonality is satisfied.

### *(iii) Rule 23(a)(3) - Typicality*

Under Rule 23(a)(3), a class representative's claims must also be typical of the putative class they seek to represent. *See* Fed. R. Civ. P. 23(a)(3). Typicality under Rule 23(a)(3) "measures whether a significant nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003); *see also Kornberg v. Carnival Cruise Lines, Inc*., 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"). "Neither the typicality nor the commonality requirement mandates that all putative class members share identical claims, and [] factual differences among the claims of the putative members do not defeat certification." *Cooper v. S. Co*., 390 F.3d 695, 714 (11th Cir. 2004) (cleaned up); *see also Ault v. Walt Disney World Co*., 692 F.3d 1212, 1216 (11th Cir. 2012). When the same course of conduct is directed at the named plaintiff and the members of the proposed class, typicality is satisfied. *See*

*Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

Here, Plaintiff's interests are aligned with the Settlement Class in that they all were sent a notice letter indicating their PII may have been impacted in the Cybersecurity Incident and were therefore all affected by the same purportedly inadequate security that allegedly harmed Settlement Class members. Their claims are based on the same legal theories and underlying event. Thus, the typicality requirement is satisfied. *See Hines*, 334 F.3d at 1256; *Mednax*, 2024 WL 1554329, at *4.

### (iv) *Rule 23(a)(4) - Adequacy*

Adequacy under Rule 23(a)(4) requires that "the representative parties . . . fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy relates to (i) whether the proposed class representative has interests antagonistic to the class, and (ii) whether the proposed class counsel has the competence to undertake this litigation. *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 314–15 (S.D. Fla. 2001). The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Emp's Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (cleaned up); *Mednax*, 2024 WL 1554329 at *5.

Here, like all Settlement Class members, Plaintiff has claims against

Defendant arising from the Cybersecurity Incident that allegedly impacted her PII and was similarly injured by Defendant's allegedly wrongful acts. Proof of Plaintiff's claims would necessarily involve adjudicating the same issues of law and fact as the claims of the Settlement Class as a whole. Thus, Plaintiff and the Settlement Class have the same interests in recovering damages and other relief. Further, Plaintiff has also diligently and adequately prosecuted this action through Class Counsel by, among other things, reviewing filings, promptly providing documents and information to Class Counsel, acting in the best interest of the Settlement Class, and accepting the class wide Settlement. Plaintiff is committed to continuing to assist Class Counsel through Final Approval.

As for Class Counsel, they are highly qualified and have a great deal of experience litigating consumer class actions, including in the data privacy context, demonstrating their adequacy. *See Mednax*, 2024 WL 1554329 at *5 ("Class Counsel are adequate because of their vast experience as vigorous data breach class action litigators."). Class Counsel have litigated this Action, including evaluating the claims, preparing comprehensive pleadings, serving informal discovery, consulting with data security experts, complying with Court orders and requirements, and participating in settlement negotiations that ultimately resulted in this Settlement.

Accordingly, Plaintiff has no conflicts with the Settlement Class and has

demonstrated her adequacy as Class Representatives by "(i) having a genuine personal interest in the outcome of the case; (ii) selecting well-qualified Class Counsel; (iii) producing information and documents to Class Counsel to permit investigation and development of the complaints; (iv) being available as needed throughout the litigation; and (v) monitoring the Litigation." *See Mednax*, 2024 WL 1554329 at *5. The adequacy requirement is therefore met and the Court confirms its appointments of Plaintiff as the Class Representative and the Class Counsel.

### 2.  The Rule 23(b)(3) Factors Are Satisfied.

Having found all Rule 23(a) factors are satisfied, the Court proceeds to address at least one Rule 23(b) subsection—namely, Rule 23(b)(3)—to ascertain whether "questions of law or fact common to class members predominate over any questions affecting only individual members," and to ensure "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). For predominance and superiority, the court may consider the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, … for the proposal is that there be no trial.").

*(i) Predominance*

The predominance inquiry looks at "the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement." *Id.* at 623. "[C]ommon issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016). Further, "[i]t is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over individual questions." *In re Takata Airbag Prod. Liability Litig.*, No. 2599, 2023 WL 4925368, at *6 (S.D. Fla. June 20, 2023). The focus on a defendant's security measures in a data breach class action "is the precise type of predominant question that makes class-wide adjudication worthwhile." *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312 (N.D. Cal. 2018).

Here, as in other data breach cases, common questions predominate because all claims arise out of a common course of conduct by Defendant. *Id.* at 312; *Mednax*, 2024 WL 1554329 at *5. All Settlement Class members had their PII compromised in the Cybersecurity Incident and the security practices at issue did not vary from person to person. "Thus, because these common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis." *See Mednax*, 2024 WL 1554329

at *5. The predominance requirement is therefore satisfied.

### *(ii) Superiority*

To satisfy the superiority requirement of Rule 23(b)(3), a movant must show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The focus of the superiority analysis is on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to plaintiffs." *Mohamed v. American Motor Co., LLC*, 320 F.R.D. 301, 316 (S.D. Fla. 2017) (cleaned up); *Mednax*, 2024 WL 1554329 at *5.  Here, adjudicating individual actions would be impractical. The amount in dispute for individual class members is too small, the technical issues involved too complex, and the expert testimony and document review too costly. Further, individual claim prosecution would be prohibitively expensive, needlessly delay resolution, and may lead to inconsistent rulings. Accordingly, certification of this suit as a class action is superior to other methods to fairly, adequately, and efficiently resolve the claims asserted.

### B. **Final Approval of the Settlement Is Warranted.**

The Court already determined it was likely to grant Final Approval of the Settlement in the Preliminary Approval Order. Now, the Court must finally determine whether the Settlement is fair, adequate, and reasonable under Rule 23(e)(2) while also considering the *Bennett* factors, with the Settlement Class having

now been given Notice of the Settlement and the opportunity to opt-out of or object

to it. The Court finds the Settlement satisfies the requirements of Rule 23(e) as well

as the *Bennett* factors.  The Court will address each factor in turn.

### 1.  Rule 23(e)(2)(A) - Adequacy of Representation

For the same reasons that led the Court to find Class Counsel adequate to

certify the Settlement Class, Class Counsel have adequately represented the

Settlement Class's interests for purposes of Final Approval. Additionally, as the

Court has found for purposes of preliminary certification, Plaintiff's respective

interests are coextensive and do not conflict with the interests of the Settlement

Class, demonstrating her adequacy. Plaintiff has the same interest in the Settlement

relief as do Settlement Class members, and the absent Settlement Class members

have no diverging interests. Accordingly, the first Rule 23(e)(2) factor weighs

heavily in favor of granting Approval because both Class Counsel and the Class

Representatives have adequately represented the Settlement Class. *See Mednax*,

2024 WL 1554329 at *6.

### 2. Rule 23(e)(2)(B) and *Bennett* Factors 5-6 - Arm's Length Negotiations

The Court finds the Settlement was reached in the absence of collusion and is

the result of good faith, informed, and arm's-length negotiations between

experienced attorneys who are familiar with class action litigation and with the legal

and factual issues at stake. *Mednax*, 2024 WL 1554329 at *6. Before discussing a potential resolution, the Parties conducted thorough factual and legal investigation including significant informal discovery, allowing them to fully understand the claims, defenses, and risks of continued litigation. The Settlement was reached after extensive legal and factual investigation by the Parties, and weeks of negotiations to finalize the terms of the Agreement and ancillary documents. The Parties did not discuss attorneys' fees and expenses until after they had agreed on all material Settlement terms.

For these reasons and those discussed related to attorneys' fees below, there was no fraud or collusion in arriving at the Settlement. *See Bennett*, 737 F.2d at 986. Accordingly, "[t]he fact that the Settlement was achieved through well-informed, arm's-length, and neutrally supervised negotiations weighs in favor of granting preliminary approval under Rule 23(e)(2)(B)." *Mednax*, 2024 WL 1554329 at *6.

### 3.  Rule 23(e)(2)(C) and *Bennett* Factors 1-4 - Adequacy of Settlement Relief

The Court finds, considering the likelihood of success at trial, the complexity, expense, and duration of the litigation, the relief provided is reasonable. While Plaintiff believes the claims asserted in the Action are meritorious and the Settlement Class would ultimately prevail at trial, continued litigation against Defendant poses significant risks that make any recovery for the Settlement Class uncertain. "[D]ata

breach class actions are risky cases." *Mednax*, 2024 WL 1554329 at *7; *see also Fox v. Iowa Health Sys.*, No. 3:18-cv00327, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) ("Data breach litigation is evolving; there is no guarantee of the ultimate result . . . [they] are particularly risky, expensive, and complex."); *Fulton-Green v. Accolade, Inc.*, No. 18-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) (data breach class actions are "a risky field of litigation because [they] are uncertain and class certification is rare."). And given the complexity of the claims and arguments here, a lengthy trial would likely be required before Settlement Class members could recover. Maintaining class certification through trial "is another over-arching risk" as well. *Mednax*, 2024 WL 1554329 at *7. "Thus, through the Settlement, Plaintiff and Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all," weighing heavily in favor of preliminary approval. *Id*.

Despite the risks involved with further litigation, the Settlement provides outstanding benefits, including Cash Payments and Credit Monitoring for all Settlement Class members. *See Equifax*, 999 F.3d at 1273 ("Settlements also save the bench and bar time, money, and headaches"). All Settlement Class members are given an equal opportunity to claim Settlement Class Member Benefits. Specifically, each Settlement Class member has the option to be reimbursed for Ordinary Losses up to $1,500.00, Extraordinary Losses up to $5,000.00, or they may elect to receive

a flat cash payment of $50.00. In addition, all Settlement Class members may elect Credit Monitoring.

The Court observes the Settlement Class has reacted favorably by submitting Claims. The Court further finds the Claim Form submission process and distribution of Settlement Class Member Benefits to be fair, convenient, and effective. Settlement Class Members will promptly receive Cash Payments by electronic means or paper check issued by the Settlement Administrator and Credit Monitoring, if elected.  The Settlement Administrator is highly qualified to manage the entire process. Thus, "[t]he method of distributing the settlement benefits will be equitable and effective." *Mednax*, 2024 WL 17477004 at *7.

Furthermore, the attorneys' fees do not impact the other terms of the Settlement. Class Counsel's request for 33.33% of the Settlement Fund in attorneys' fees, plus reimbursement of expenses, to be paid from the Settlement Fund, is subject to this Court's approval.  Class Counsel and Defendant negotiated and reached agreement regarding attorneys' fees and expenses only after reaching agreement on all other material Settlement terms. The Settlement, including disbursement of the Settlement Class Member Benefits, is not contingent on approval of the attorneys' fee or expense award to Class Counsel.  Finally, the Parties' agreements are all in the Agreement.

The Court therefore finds Rule 23(e)(2)(C)'s requirements and the first four

*Bennett factors* are met.

### 4. *Rule 23(e)(2)(D)* - Equitable Treatment of Settlement Class Members

As this Court found in *Mednax*, 2024 WL 1554329 at \*7, all Settlement Class members are given an equal opportunity to claim Settlement Class Member Benefits. Thus, "[t]he method of distributing the settlement benefits will be equitable and effective." *Id.* Further, the attorneys' fees do not impact the other Settlement terms, as Class Counsel and Defendants negotiated and reached agreement regarding attorneys' fees and expenses only after agreeing on all other material Settlement terms. The Settlement, including disbursement of the Settlement Class Member Benefits, is not contingent on approval of the attorneys' fee or expense award. Finally, the Parties' agreements are all in the Agreement.

### C. Appointment of Class Representatives and Class Counsel Is Appropriate.

For the reasons discussed above, the Court finds Plaintiff has adequately represented the Settlement Class throughout this Action. The Court therefore designates and appoints Plaintiff as Class Representative.

Rule 23(g)(1)(A)'s four factors for appointing class counsel for a certified class are: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit

to representing the class." Federal Rule of Civil Procedure 23(g)(1)(A). The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."

The Court finds proposed Class Counsel have expended a reasonable amount of time, effort, and expense investigating the Cybersecurity Incident and in litigating this Action. Further, it is clear from their track record of success, as outlined in their resumes, that Class Counsel are highly skilled and knowledgeable concerning class action practice. Therefore, for purposes of the Settlement only, and pursuant to Rule 23(g)(1), the Court appoints MaryBeth Gibson and Mariya Weekes as Class Counsel to act on behalf of the Settlement Class with respect to the Settlement. They are experienced and competent counsel and will adequately protect the interests of the Settlement Class.

### D. **The Notice Program Was Properly Administered.**

Notice of a proposed settlement must be the "best notice practicable." Fed. R. Civ. P. 23(c)(2)(B). The best notice practicable is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

Having consider the results of the Notice Program implementation, the Court now finds the form, content, and method of giving notice to the Settlement Class as

described in the Notice Program, including the forms of Postcard Notice and Long Form Notice, email Notice, Settlement Website, Settlement telephone line for frequently asked questions, and Claim Form was (a) the best practicable notice to the Settlement Class; (b) reasonably calculated, under the circumstances, to apprise to apprise Settlement Class members of the pendency of the Action, the terms of the Settlement, the effect of the proposed Settlement (including the Releases contained therein), and their rights under the proposed Settlement, including the right to opt-out of or to object to the proposed Settlement and appear at the Final Approval Hearing; (c) reasonable and constituted due, adequate, and sufficient notice to those persons entitled to receive notice; and (d) written in plain language, using simple terminology, and designed to be readily understandable by Settlement Class members. Accordingly, the Notice Program satisfied the Rule 23(c)(2)(B) and due process requirements.

Rule 23(h)(1) further requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." The Notice Program satisfied that requirement, as it notified the Settlement Class that Class Counsel will apply to the Court for an award of attorneys' fees of up to 33.33% of the Settlement Fund, plus reimbursement of expenses.

****

Upon final review, the Court finds the proposed Settlement is fair, reasonable, and adequate; the Settlement Class is certified for Settlement purposes; and the Notice Program satisfied the requirements of Rule 23 and due process. Accordingly, Final Approval is granted.

## **ATTORNEYS' FEES AND EXPENSE AWARD**

Plaintiff submitted a Motion for Attorneys' Fees and Expenses on March 31, 2025. Pursuant to the Settlement and the Notices, and consistent with recognized class action practice and procedure, the Court hereby grants the Motion and awards Class Counsel $216,666.66 for attorneys' fees, which is equal to 33.33% of the $650,000.00 Settlement Fund, and $1,432.85 for reasonable litigation expenses.

The requested attorneys' fee award is within the range of reason under the factors listed in *Camden I Condo. Ass'n. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991).[2] It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to attorneys' fees based upon the benefit obtained. *Camden I*, 946 F.2d at 771; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478

---

[2] The factors include:    the time and labor required; (2) the novelty and difficulty of the relevant questions; (3) the skill required to properly carry out the legal services; (4) the preclusion of other employment by the attorney as a result of his acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the clients or the circumstances; (8) the results obtained, including the amount recovered for the clients; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the clients; and (12) fee awards in similar cases. *Camden I*, 946 F.2d at 772 n.3.

(1980). The common benefit doctrine is an exception to the general rule that each party must bear its own litigation costs. "The doctrine serves the 'twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts.'" *Gevaerts v. TD Bank, N.A.*, No. 11:14-cv-20744, 2015 WL 6751061, at *10 (S.D. Fla. Nov. 5, 2015) (citation omitted). "The common benefit doctrine stems from the premise that those who receive the benefit of a lawsuit without contributing to its costs are 'unjustly enriched' at the expense of the successful litigant." *Id.* (citing *Van Gemert*, 444 U.S. at 478). "As a result, the Supreme Court, the Eleventh Circuit, and courts in this District have all recognized that '[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole.'" *Id.* (citations omitted); *see also Camden I*, 946 F.2d at 771 ("Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval."). Courts have also recognized that appropriate fee awards in cases such as this encourage redress for wrongs caused to entire classes of persons and deter future misconduct of a similar nature. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980). Adequate compensation promotes the availability of counsel for aggrieved persons.

In the Eleventh Circuit, class counsel are awarded a percentage of the funds obtained through a settlement. In *Camden I* – the controlling authority regarding attorneys' fees in common-fund class actions – the Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774.

The Court has discretion in determining the appropriate fee percentage. "There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *In re Sunbeam Sec. Litigation*, 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001) (quoting *Camden I*, 946 F.2d at 774).

Class Counsel's attorneys' fee request falls within this accepted range. *See In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, No. 21-MD-02994-RAR, 2024 WL 4415214 (S.D. Fla. Oct. 5, 2024) (noting district courts in the Eleventh Circuit routinely approve fee awards of one-third of the common fund settlement). *See also, e.g., In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2020 WL 4586398, at *16 (S.D. Fla. Aug. 10, 2020) (awarding a 35% fee); *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1257-58 (S.D. Fla. 2016) (awarding 33.33%); *Wolff v. Cash 4 Titles*, No. 03-22778-CIV, 2012 WL 5290155, at *5-6

(S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third.") (citing Circuit case law and listing Southern and Middle District of Florida attorneys' fees awards); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1291 (11th Cir. 1999), *cert. denied*, 530 U.S. 1289 (2000) (affirming fee award of 33.33 % of settlement).

Class Counsel litigation expenses, comprised of actual out-of-pocket expenses that Class Counsel reasonably and necessarily incurred and paid in connection with the prosecution of the Action and the Settlement, are reasonable. "Upon submission of adequate documentation, plaintiffs' attorneys are entitled to reimbursement of those reasonable and necessary out-of-pocket expenses incurred in the course of activities that benefitted the class." *Morgan*, 301 F.Supp.3d at 1258. Further, pursuant to Fed. R. Civ. P. 23(h), a trial court may award nontaxable costs that are authorized by law or the parties' agreement. *See also Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. Jan. 8, 1988) (noting plaintiffs' counsel is entitled to be reimbursed from the class fund for reasonable expenses incurred).

## RELEASES, ENTRY OF FINAL JUDGMENT, AND RETENTION OF JURISDICTION

With the exception of those listed on *Exhibit A*, the Court adjudges that the Class Representative and all Settlement Class Members are bound by this Final Approval Order.

Because the Court approves the Settlement set forth in the Agreement as fair, reasonable, and adequate, the Court authorizes and directs implementation of all terms and provisions of the Agreement, including the payment of Valid Claims, attorneys' fees and expenses, and the Settlement Administration Costs.

Judgment shall be, and hereby is, entered dismissing the Action with prejudice, on the merits, and without taxation of costs in favor of or against any Party.

As of the Effective Date, the Releasing Parties hereby fully and irrevocably release and forever discharge the Released Parties of and from the Released Claims. Upon the entry of this Final Approval Order, with the exception of Class Counsel, Defendant's Counsel, Defendant, and the Class Representatives' implementation of the Settlement and the approval process in this Action, all Settlement Class Members shall be enjoined and barred from asserting any claims or continuing any litigation against Defendant and the Released Parties arising out of, relating to, or in connection with the Released Claims.

In the event there are funds remaining in the Settlement Fund 20 days following payment of Settlement Class Member Payments, Cash Payments will be subject to a *pro rata* increase from the Net Settlement Fund. This *pro rata* increase to Cash Payments will be made on an equal percentage basis.

The Court hereby decrees that neither the Agreement, nor this Final Approval

Order, nor the fact of the Settlement, is an admission or concession by Defendant or the Released Parties of any fault, wrongdoing or liability whatsoever, or as an admission of the appropriateness of class certification for trial or dispositive motion practice. This Final Approval Order is not a finding of the validity or invalidity of any of the claims asserted or defenses raised in the Action. Nothing relating to the Settlement shall be offered or received in evidence as an admission, concession, presumption, or inference against Defendant or the other Released Parties in any proceeding, other than such proceedings as may be necessary to consummate or enforce the Settlement Agreement or to support a defense based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense.

The Court hereby retains and reserves jurisdiction over: (a) implementation of this Settlement and any distributions from the Settlement Fund; (b) the Action, until the Effective Date, and until each and every act agreed to be performed by the Parties shall have been performed pursuant to the terms and conditions of the Settlement Agreement, including the exhibits appended thereto; and (c) all Parties, for the purpose of enforcing and administering the Settlement.

In the event the Effective Date of the Settlement Agreement does not occur, the Settlement shall be rendered null and void to the extent provided by and in

accordance with the Settlement Agreement, and this Order shall be vacated. In such event, all orders entered and releases delivered in connection with the Settlement shall be null and void and the Action shall return to its status immediately prior to execution of the Settlement Agreement.

There being no just reason for delay, the Clerk of Court is hereby directed to enter final judgment forthwith pursuant to Federal Rule of Civil Procedure 58.

**SO ORDERED** this 19th day of May, 2025.

_____

**HONORABLE LEIGH MARTIN MAY**
**UNITED STATES DISTRICT JUDGE**

**EXHIBIT A**

**First Advantage Exclusion List**

• Carlos Spiegler

• Dana Arnett

• Deshaunte Selby

• Veronica Guerra

• Alberto Perotin